[Civ. No. 5520. First Appellate District, Division One.—July 10, 1926.]

In the Matter of the Estate of WILLARD W. WHITNEY, Deceased. MARY E. WHITNEY et al., Appellants, v. GEORGE BURNHAM et al., Respondents.

[1] TRUSTS—WILLS—PURPOSE OF TRUST—SETTLEMENT OF FIRST ANNUAL ACCOUNT — INTEREST. — Where the express and primary object of a trust created by will was to reduce the *corpus* of the estate into cash and have it distributed among the beneficiaries, it not being the purpose of deceased to have the trustees keep the *corpus* of the estate invested, and where the trustees, in endeavoring to carry out the purposes of the trust, made three distributions to the beneficiaries amounting to some seventy-five thousand dollars in a little over a year's time, their declared purpose being to continue the practice of making distribution every ninety days, whenever accumulated amounts were sufficient to warrant a disbursement consistent with judicious management of the estate, the probate court did not err, in approving the first annual account of the trustees, in not charging them with interest upon the balances they may have had at certain short periods of the year.

[2] ID. — INTEREST — LIABILITY OF TRUSTEES — GOOD FAITH. — The liability of a trustee to pay interest must be determined from the character of the trust, and the circumstances attending its administration, it being the general rule that a trustee acting in good faith, who keeps funds in his hands ready to distribute, should not be charged with interest.

[3] ID.—MANAGEMENT OF TRUST ESTATE—DUTY OF TRUSTEES—INTEREST—ACCOUNTING.—In the execution of the trust, trustees must exercise the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs, and if, in carrying out the manifest intention of the testator, delay in distribution occurs for any reason, and sums accumulate that simple business prudence dictates should be invested, and such sums are not invested or placed at interest, such omission will subject trustees to the payment of interest they ought to have received. If they become short of this duty they will be held to a strict personal accountability for any losses which may result from such omissions, and the fact that they neither made nor intended to make any personal gain from their omission will not exonerate them from liability.

[4] ID.—DEPOSIT OF TRUST FUNDS—BANKS AND BANKING—INTEREST. The mere fact that a bank in which trust funds are deposited and in which the trustees are officers pays no interest on sums awaiting distribution will not relieve the trustees from placing the funds in some other reliable bank that does pay interest.

[5] ID.—ORDER APPROVING ANNUAL ACCOUNT OF TRUSTEES—APPEAL—NOTES AND BONDS—ACCOUNTING—EVIDENCE.—On this appeal from an order approving the first annual account of trustees under a will, there is no merit in the objection that said account lacks the detail contemplated by section 1699 of the Code of Civil Procedure in that it fails to contain any reference to certain notes and bonds, where the decree of distribution in the estate was in evidence at the hearing upon the trustees' first account and it clearly shows the history of such items; and the same may be said of an item paid as a real estate dealer's commission for the sale of certain lots, such matter likewise having . been disposed of in the settlement of the final account of the executors (later the trustees) of the estate.

[6] ID.—COLLECTION OF RENTS—ACCOUNTS—EVIDENCE.—On such appeal the objection that the account of the trustees, with respect to the rents collected by them, fails to show details of the various payments by the different tenants, is untenable, where it appeared in evidence that the broker who collected the rents rendered monthly detailed statements to the trustees both as to . the names of the tenants and the amount paid by each, accompanied by a check representing the amount of the collections, and such statements were in evidence at the hearing on the account.

3.  See 25 **Cal. Jur.** 341.

4.  Deposit of funds in bank in which he is interested as affecting liability of trustee for interest, note, 1 **A. L. R.** 1646.

[7] ID.—CHARGE FOR COLLECTION OF RENTS—PROPRIETY OF.—It cannot be expected that trustees should personally collect the rents due from tenants by making a personal call upon each of them, and a charge by an agent for the collection of rents is a proper one made in the necessary care and management of the estate.

[8] ID.—COMPENSATION OF TRUSTEES—ACCEPTANCE OF TRUST.—Where an instrument by which a trust is created fixes the compensation of the trustees, they cannot claim a larger sum, since, under section 2274 of the Civil Code, they are entitled to the amount specified and no more; and their acceptance of the trust will be held as an agreement to receive such compensation as the instrument directs.

[9] ID.—TRUSTEES—COMPENSATION—LIMITATION IN WILL — CONSTRUCTION.—Trustees may not elect to take a legacy given as part consideration for their services, and a larger additional amount than the instrument creating the trust provides for; and the mere fact that persons named as executors and trustees in a will attempt to separate their duties as executors from those as trustees and to have their fees apportioned can in no manner affect the limitations contained in the will, which recites that the compensation provided for shall be in full for their services as executors and trustees, nor will the fact that the order settling the final account of the executors, wherein they were allowed certain fees as such, has become final have the effect of enlarging the limited amount which the will provides for the services of such persons in both capacities, and the amount of the payment to them as executors should be taken into account when they ultimately receive the fees provided for.

[10] ID.—INADEQUACY OF COMPENSATION—ACCEPTANCE OF TRUST—ABSENCE OF AUTHORITY TO INCREASE COMPENSATION — ORDERS. — If the amount fixed by the will for the compensation of the executors and trustees is deemed by them inadequate, they may refuse to act, but having accepted their trust, they are bound thereby, and the order of the probate court allowing them a greater amount is without authority.

[11] ID. — NOTICE OF APPEAL — SUFFICIENCY OF. — A notice of appeal from an order of the superior court settling the first annual account of trustees under a will which recites, among other things, that appellants "hereby appeal to the Supreme Court, etc., from that certain judgment made in the above entitled matter on the 5th day of June, 1925, settling, allowing and approving the First Annual Account of Trustees of said estate and trust of said deceased as presented to said court, and which Judgment or Order was rendered in favor of said trustees and against

8.  See 25 Cal. Jur. 336.

the aforesaid objectors," is not subject to the objection that it is ungrammatical, inartificial, and meaningless, and such an objection is hypercritical and without merit.

[12] ID.—DISTRIBUTION—DISCRETION—EQUITY.—Where it is manifest from the provisions of a will creating a trust that a certain discretion is vested in the trustees in the matter of distributing the personal estate, in the absence of a showing that the trustees have abused this power, a court of equity will not interfere with the reasonable exercise of such discretion.

(1) 39 Cyc., p. 423, n. 2; 40 Cyc., p. 1758, n. 1. (2) 39 Cyc., p. 293, n. 3, p. 422, n. 97, 98. (3) 39 Cyc., p. 295, n. 11, p. 423, n. 4, p. 426, n. 22. (4) 39 Cyc., p. 423, n. 9. (5) 39 Cyc., p. 468, n. 21. (6) 39 Cyc., p. 498, n. 44. (7) 39 Cyc., p. 330, n. 86. (8) 39 Cyc., p. 494, n. 11. (9) 39 Cyc., p. 491, n. 95, p. 494, n. 11. (10) 39 Cyc., p. 494, n. 11. (11) 3 C. J., p. 1226, n. 57. (12) 39 Cyc., p. 316, n. 25, p. 317, n. 27.

APPEAL from an order of the Superior Court of San Diego County settling the first annual account of trustees under a will. C. N. Andrews, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Adam Thompson and Ren Thompson for Appellants.

Haines & Haines and B. J. Bradner for Respondents.

TYLER, P. J.—Appeal from certain portions of an order settling the first annual account of trustees under a will. The facts necessary for a discussion of the objections raised show that one Willard W. Whitney died testate in January, 1923, leaving a large estate consisting of real and personal property. His will was duly admitted to probate in San Diego County and George Burnham and Herbert E. Anthony were appointed his executors. They proceeded to administer upon the estate and regular proceedings were had leading up to the distribution which was made on the twenty-ninth day of February, 1924. Under the terms of the will as modified by its codicils, Mr. Burnham and Mr. Anthony, who were made executors, were also named trustees and the decedent's entire property was devised and bequeathed to them as such, in trust to manage and dispose of the same,

for which purpose they were allowed a period of ten years
to distribute the proceeds in aliquot parts among numerous
beneficiaries, some of whom are appellants herein. Under
the decree of distribution the assets of the estate on hand
at the close of administration were accordingly distributed
to them as such trustees and they have since managed them
in that capacity. In due time they filed their first annual
account as such trustees which embraced their transaction
from February 29, 1924, the date of the decree of distribu-
tion, to and including March 24, 1925. This account was
settled, the order being made June 5, 1925, and it forms
the subject of the present appeal. We will discuss the
various objections in the order in which they are made.
The first objection to the account is that it does not appear
therefrom what amount of interest, if any, has been received
by the trustees from any bank or other deposit source what-
ever under said trust; nor does it appear from the account
what money, if any, has been invested by the trustees under
the trust from the money collected from the various sources
for said estate; nor does it appear in what banks the funds
received were or are invested. It was and is claimed under
this objection that the trustees had received not less than
$2,500 per month as rents from the real property of the
estate, and that they also had received some $25,389.89 dis-
tributed to them in cash under the decree of distribution,
and it is charged that the trustees, from the commencement
of their trusteeship, have had as high as $43,735.57 on de-
posit in a certain bank in the city of San Diego, without any
interest being paid thereon, and that there was at the time
the first account was presented over $25,000 belonging to the
trust fund and was not credited with any interest whatso-
ever; that the trustees should under the provisions of section
2261 of the Civil Code be made to account for interest upon
these items. That portion of the decedent's will which re-
fers to the duties of the trustees concerning the investment
of the funds reads as follows: "I hereby direct my said
trustees to keep all monies that may come into their hands
as rental, income or otherwise, and to invest and reinvest
the same as in their judgment may seem best for the pur-
pose of securing the highest and safest income therefrom
for the uses and purpose of the estate." It also provides

that "they are further authorized and empowered to dispose of surplus monies not necessary for the business-like management, maintenance and care of the estate from time to time, and in such amounts as they deem best, to the said hereinafter named legatees, said distributions to be *pro rata.*" Then follows the further provision limiting the trustees to a period of ten years within which to sell and convert into cash all the real and personal property of the estate and to distribute the same to the beneficiaries. The record shows that at the time of distribution to the trustees of the assets of the estate, there came into their hands a cash balance of $25,389.89. This balance was on deposit in a bank at San Diego, of which the trustees were officers. It further shows that between the date of the distribution on February 29, 1924, and March 14, 1924, the collections of the trustees amounted to but a few hundred dollars. On the latter date, a period of about two weeks from the date of the making of the decree of distribution, the trustees made a *pro rata* distribution, in addition to proper disbursements, to the beneficiaries by checks which after deductions for certain taxes advanced on the distributive shares, aggregated the sum of $25,931.43. The result of this distribution substantially exhausted all the money in the hands of the trustees at this time. This true condition was not reflected on the ledger account for the reason that the beneficiaries are widely scattered throughout this country and Canada, and the checks sent them were for some time outstanding. The record further shows that the trustees had sold certain Michigan bank stock belonging to the estate, and had forwarded to the purchaser the certificate with draft attached for the amount due. At this time the trustees charged themselves with the amount of the sale, though the proceeds thereof did not reach their hands until some time later, the delay being caused by the state of Michigan demanding the sum of $841.08 as an inheritance tax on the same. The actual sale price had been credited to the estate. The amount ultimately received by the trustees for the sale of this stock was the sum of $25,920, which was some $874 less than the amount they had credited the estate with. The difference was thereupon charged back to the trustees' account. During this period of delay, as above described,

the ledger sheet showed this amount to be actually in the estate from the time the amount of the draft was credited to it by the trustees when, as a matter of fact, the sum was not actually on hand. In September, 1924, the trustees made another distribution to the beneficiaries, and the greater portion of the checks representing the amount thereof were outstanding on October 1, 1924. The apparent balance shown by the books did not therefore correctly reflect the actual balance. There is also evidence in the record to show that in addition to these distributions the trustees made a third one to the beneficiaries immediately after filing their account and before the hearing thereof, so at the time of the settlement of the account the balance appearing was greatly reduced by outstanding checks. Certain oral testimony given by bankers at San Diego was had to show upon what accounts interest would be allowed. There was testimony to the effect that three per cent would be credited on balances upon certain character of checking accounts, but with restrictions upon the checking privilege, and that where special arrangements were not made, the right to demand advance notice of withdrawals was retained in the event of some banking stringency. The testimony upon this subject is conflicting. The court found that no interest should be charged to the trustees on account of any balance of cash from time to time in their hands or in the bank during the period covered by the first account. **[1]** The express and primary object of the trust was to reduce the *corpus* of the estate into cash and have it distributed among the beneficiaries. It was not the purpose of deceased to have the trustees keep the *corpus* of the estate invested. It is manifest from the evidence that the trustees are endeavoring to carry out the purposes of the trust, for they have made three distributions to the beneficiaries amounting to some $75,000 in a little over a year's time and there is testimony of one of the trustees to the effect that it is the policy of the trustees to make a distribution every ninety days if possible. Their declared purpose is to continue this practice whenever accumulated amounts are sufficient to warrant a disbursement consistent with judicious management of the estate. Under these circumstances we cannot say that the court erred in not charging the trustees with in-

terest upon the balances they may have had at certain short periods of the year. We do not wish to be understood, however, as declaring that where accumulated funds have reached an amount where interest thereon can be obtained, and the distribution of such funds is held in abeyance for any reason for such a length of time that it would amount to a lack of ordinary business prudence for the trustees not to deposit them where they might earn some interest that the trustees would not be liable for a loss of interest. [2] The liability of a trustee to pay interest must be determined from the character of the trust, and the circumstances attending its administration. The general rule is that a trustee acting in good faith, who keeps funds in his hands ready to distribute, should not be charged with interest thereon (39 Cyc. 422). It is, however, of the most vital importance that trustees be held to a strict and rigid accountability. [3] They must exercise, in the execution of the trust, the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs. If, then, in carrying out the manifest intention of the testator, delay in distribution occurs for any reason, and sums accumulate, that simple business prudence would dictate should be invested, and such sums are not invested or placed at interest, such omission should and will subject trustees to the payment of the interest they ought to have received. If they become short of this duty they will be held to a strict personal accountability for any losses which may result from such omissions. And the fact that they neither made nor intended to make any personal gain from their omission would not exonerate them from liabilty. Here many of the beneficiaries are aged persons who are in a necessitous condition and they are desirous of having the amounts due them speedily paid, and the trustees, it seems, are endeavoring to carry out their wishes in this respect instead of temporarily investing the funds which they might be justified in doing under the power given them by the terms of the trust. Under these circumstances we are of the opinion that the court properly refused to charge the trustees with interest.

[4] In concluding this subject it might be well, however, to point out that in the event of a delay in the making of

further distributions, the mere fact that the bank in which the trust funds are deposited and in which the trustees are officers, pays no interest on sums awaiting distribution, will not relieve the trustees from placing the funds in some other reliable bank that does pay interest.

[5] The next objection is to the effect that the account does not comply with section 1699 of the Code of Civil Procedure as it lacks the detail contemplated by that section. In this connection appellants first complain that the account fails to contain any reference to certain notes and bonds. These notes and bonds were appraised in the estate as being of the value of $17,780. Under the final account in the estate respondent trustees as executors had charged themselves with the full face value of these securities. In their first account as trustees they have charged themselves with the entire value of the estate distributed to them as trustees after administration. In this list of assets on hand these securities do not appear, for the reason that they were sold in the course of the administration of the estate and the amount received for each security, together with the interest thereon, had been there fully and completely accounted for. The decree of distribution in the estate was in evidence at the hearing upon the trustees' first account and it clearly shows the history of these items. There is no merit in the objection. The same may be said of the item of $300 paid as a real estate dealer's commission for the sale of certain lots. This matter was likewise disposed of in the settlement of the final account of respondents as executors in the estate. The item was therefore properly found by the court to form no part of the trustees' account.

[6] Appellants next object to a lack of detail in the account with respect to the rents collected by the trustees from the real property belonging to the estate. They claim that the account merely shows that an amount in excess of $2,000 has been collected monthly, but that no details of the various payments by the different tenants are set forth, which omission renders the account objectionable. It appeared in evidence that the broker who collected the rents rendered monthly detailed statements to the trustees both as to the names of the tenants and the amount paid by each, accompanied by a check representing the amount of the

collections. These statements were in evidence at the hearing. Under these circumstances the court held, and we think properly so, in passing upon the objection, that no useful purpose would be accomplished by requiring the account to be amplified with respect to the same. The monthly receipts from the real estate were constant and only varied a few dollars and were fully accounted for. There is no merit in the objection.

[7] Objection is also made to the agent's charge for the collection of the rents. We are of the opinion that there is no merit in this objection. It cannot be expected that trustees should personally collect the rents due from tenants by making a personal call upon each of them. The charge was a proper one made in the necessary care and management of the estate. (2 Beach on Trustees, secs. 460, 588; *Estate of Graham,* 187 Cal. 222 [18 A. L. R. 631, 201 Pac. 456].)

The next objection relates to the order concerning the compensation of respondent trustees under the will. This objection requires a somewhat extended recital of the facts in relation thereto. Under the terms of the will the testator divided his estate into seventeen parts and gave to the recipients of his bounty certain parts or portions thereof. The third clause of the will of the deceased provided in part as follows: "In recognition of the many services performed for me during my lifetime, and in appreciation thereof, I direct that there shall be paid to George Burnham of San Diego, California, two-thirds of one part; to William R. Rogers of San Diego, California, two-thirds of one part." These parties were named as executors and trustees under the will. William R. Rogers predeceased the testator and, in consequence thereof, the testator by codicil provided that in view of the death of Rogers he nominated and appointed respondent Herbert E. Anthony in the place and stead of Rogers, and he directed that said Anthony be paid the same *quantum* of his estate as Rogers had been bequeathed, namely, two-thirds of one part. Two-thirds of one part of the estate, according to the report of the inheritance tax appraiser, amounts to the sum of $21,860.72. The seventh clause of the will of the deceased provided as follows: "As a consideration and compensation to my said executors and

trustees for their services in the performance of their duties as executors and trustees under this trust, and in addition to the portions heretofore provided to be given them, and upon a full understanding with them, the said executors and trustees, they are to receive the sum of Twenty-five Hundred ($2,500.00) Dollars each, which said sum is to be paid in full of all their services as such executors and trustees.''

At the close of the administration of the estate Burnham and Anthony as executors filed their final account and petition for distribution. They filed a waiver of the compensation fixed by the will and asked for and were given the statutory commissions as executors in lieu thereof, which were fixed in the sum of $4,363 to be divided between them. In the order settling the final account it was provided that the sum allowed was for executors' commissions only and was exclusive of such compensation as might thereafter be allowed by the court for such services as might be rendered by the executors as trustees under the terms of the will. No appeal was taken from this order and it became final. When the first account of the trustees as such was heard they petitioned the court for a reasonable allowance to them as trustees for services rendered in relation to the trust subsequent to the decree of distribution. Appellants herein filed their objection to any order being made for any allowance whatsoever for the reason that their compensation had been specifically fixed and determined by the will of the deceased, and under the express provisions of section 2274 of the Civil Code, they were entitled to the sum specified therein and no more.

The court disregarded the objection. In the order settling the first annual account of the trustees the court decreed that the bequests made by decedent to Burnham and Anthony of two-thirds of one part each of the estate, and the value of the same, were not matters having any connection with their compensation as executors or trustees and adjudged them to be entitled to the sum of $2,500 each for their services as trustees. It was further ordered, however, that payment of the same should be held in abeyance until the further order of the court. We are of the opinion that the court erred in giving such a construction to the instrument. That the legacy of two-thirds of one part of the

estate to respondents was given as part consideration for their services in both capacities there can be no question. The language of the will is plain and unequivocal in this respect. It recites that as a consideration and compensation and in addition to the portions heretofore provided to be given them, which has reference to these legacies, and upon a full understanding with them, the said executors and trustees are to receive the sum of $2,500 each, which sum is to be paid for all their services as such. We cannot conceive what language could be employed to more plainly indicate that the legacies were given to respondents in part consideration for the services to be performed under their two functions and duties. Any other construction would be contrary to the letter and spirit of the will. We do not deem an extended discussion of the subject necessary. The instrument speaks for itself. The order of the court allowing respondents an additional sum was, therefore, without authority. [8] Where an instrument by which a trust is created fixes the compensation of the trustees they cannot claim a larger sum. They are entitled to the amount specified and no more (Civ. Code, sec. 2274; *Estate of Runyon,* 125 Cal. 195 [57 Pac. 783]). Their acceptance of the trust will be held as an agreement to receive such compensation as the instrument directs. [9] In any event they may not elect, as here, to take a legacy given as part consideration for their services, and a larger additional amount than the instrument provides for, and the mere fact that respondents attempted to separate their duties as executors from that as trustees and to have their fees apportioned can in no manner affect the limitations contained in the will, which recites that the compensation provided for shall be in full for their services as executors and trustees. The order settling the final account of respondents as executors, wherein they were allowed certain fees as such, in no manner attempts to change or alter the situation. The mere fact, therefore, that this order has become final does not have the effect of enlarging the limited amount which the will provides for the services of respondents in both capacities and the amount of the payment to them as executors should be taken into account when they ultimately receive the fees provided for. Something is said in the brief of respondents

concerning the inadequacy of their compensation for administering upon an estate the value of which is over half a million dollars. If we are correct in our construction of the will with reference to the compensation of respondents, there is no force in this suggestion as the total commissions provided for amount to the sum of $48,721.44, or nearly one-tenth of the value of the estate. **[10]** Then, again, if the amount was deemed by them inadequate they could have refused to act. However this may be, the will having limited the amount which respondents should receive as compensation for their services, both as executors and trustees, and they having accepted their trust, they are bound thereby, and the order of the court allowing them a greater amount is without authority. **[11]** Respondents have taken exception to the form of the notice of appeal. They .claim it is ungrammatical, inartificial, and meaningless. The notice among other things, recites that appellants "hereby appeal to the Supreme Court, etc., from that certain judgment made in the above entitled matter on the 5th day of June, 1925, settling, allowing and approving the First Annual Account of Trustees of said estate and trust of said deceased as presented to said court, and which Judgment or Order was rendered in favor of said trustees and against the aforesaid objectors." We do not feel that any useful purpose would be gained by following the argument of attorneys for respondents in their analysis or grammatical construction of the notice. It is sufficient to say that in our opinion the objection is hypercritical and without merit.

**[12]** Appellants finally complain of the action of the court in refusing to direct the trustees to distribute the sum of one hundred thousand dollars ($100,000) to the beneficiaries from the *corpus* of the estate, it being claimed that such a distribution can be made in the proper exercise of a reasonable discretion considering the condition of the estate. Upon the subject the will expressly provides that the trustees shall keep all of the real estate that may come into their possession rented and producing income so far as the same is possible, and it directs them to make such repairs as in their judgment may seem best for the purpose of securing the highest rentals possible. It further provides that the trustees keep all funds that may come into their hands as rental,

income, or otherwise, and invest or reinvest the same as in their judgment may seem best, and authority is expressly conferred upon them to dispose of surplus money not necessary for the businesslike management and care of the estate, by making distributions from time to time to the legatees. In the event of a sale of the real estate the will directs that the trustees shall make immediate distribution of the proceeds received therefrom among the different legatees. By another subdivision a period of ten years is given the trustees to dispose of and distribute the entire estate.

Under these provisions it is manifest that a certain discretion is vested in the trustees in the matter of distributing the personal property. Under such circumstances a court of equity will not interfere with the reasonable exercise of such discretion. There is nothing in the record to show that up to the present time the trustees have abused this power. They have already made three distributions, amounting to some seventy-five thousand dollars ($75,000), within a year's time, and it was in evidence that they intend to make distributions as frequent as the income amounts to proper proportions. Under these circumstances the court was justified in refusing the order requested.

From what we have said it follows that the order must be affirmed upon all questions except that relating to the compensation of the trustees. That portion of the order must be and it is hereby reversed, with directions to the court below to strike therefrom the amount awarded to the trustees and to confine the compensation of respondents to the amounts given to them under the express provisions of the will, as full compensation for their services in both their capacities as executors and trustees. In determining this amount the trustees should be charged with the sum already received by them as executors.

Knight, J., and Cashin, J., concurred.