[No. H037330. Sixth Dist. Dec. 13, 2012.]

THOMAS THORPE, Plaintiff and Respondent, v.
AUDELITH JENIVEE REED, as Trustee, etc., et al., Defendants and
Appellants.

**COUNSEL**

Crosby & Crosby, Michael C. Crosby and Matthew A. Crosby for Defendant and Appellant Audelith Jenivee Reed.

Mark A. Dames for Defendant and Appellant Danny Reed.

Willoughby, Stuart & Bening, Ellyn E. Nesbit; Law Offices of Michael G. Desmarais and Michael G. Desmarais for Petitioner and Respondent.

## OPINION

**PREMO, Acting P. J.**—Plaintiff Thomas Thorpe succeeded the public guardian as temporary trustee of a special needs trust. The trust specified that a successor trustee was not entitled to compensation. Plaintiff served for four and one-half months and billed the estate $108,771.07 for trustee and trustee attorney fees. On his petition, the trial court awarded him $51,285.63 over objection that the trust instrument prohibited compensation. Defendants Audelith Jenivee Reed (the trustee) and Danny Reed (the beneficiary) appeal from the order and reiterate their objection. We agree with defendants. We therefore reverse the order and direct the trial court to deny plaintiff's petition.[1]

## BACKGROUND

Danny was 21 years old in 1996 when he attended the Burning Man festival in Nevada.[2] He was asleep in his tent when a drunken driver drove through the tent and caused him permanent brain damage and orthopedic injury. The probate department of the Santa Clara County Superior Court (probate court) appointed his mother, Jolaine Allen, as his conservator in 1997. Jolaine filed a personal injury suit on Danny's behalf for the Burning Man accident. In 1999, Danny was again injured by a car—this time in a crosswalk accident—and Jolaine filed another personal injury suit on Danny's behalf. Jolaine settled the Burning Man suit for $815,000 in 1999. Within the conservatorship proceeding, the probate court established a "special needs trust"[3] for Danny and ordered the net settlement proceeds conveyed to the trust. The trust appointed Jolaine as special trustee and trustee.[4]

---

[1] It is therefore unnecessary to address defendants' secondary contention, which urges that plaintiff's appointment as temporary trustee was invalid.

[2] We will refer to selected persons by their given names for clarity and not out of disrespect. (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 495, fn. 1 [136 Cal.Rptr.3d 887].)

[3] Title 42 United States Code section 1396p, subdivision (d)(4)(A) (irrevocable trust formed to own beneficiary's assets so that beneficiary's assets do not exceed $2,000 threshold for receipt of government disability and medical benefits).

[4] The trust establishes a special trustee to act as "a co-Trustee and fiduciary only for the special and limited purpose of exercising those powers and discretions that are specifically delegated to the Special Trustee under [the trust instrument]." However, the trust instrument

The trust provides as follows: "Trustee shall be entitled to receive reasonable compensation for services in the administration of this Trust. A Special Trustee and any successor Trustee shall not be entitled to receive reasonable compensation for services in the administration of this Trust."

Jolaine settled the crosswalk suit in 2002 for $900,000, and the probate court ordered the net settlement proceeds conveyed to the trust.

Jolaine did not take any compensation for her services as trustee. She lived with Danny and Danny's two sisters in a townhouse she had purchased for the trust with $270,000 and a $150,000 mortgage. She and the sisters paid part of the mortgage obligation, and Danny paid part via his government disability income.

In 2008, Jolaine was overseeing approximately $650,000 in cash deposited for the trust in a Washington Mutual Bank account when the country's financial crisis occurred. She became concerned about Washington Mutual's stability. She therefore obtained a probate court order permitting her to withdraw the money and redeposit it in seven different banks so that each account would be below the $100,000 threshold for FDIC insurance.

In 2009, a probate court investigator discovered that his office had never given Danny's trust a required biannual review. He telephoned Jolaine to no avail. He went to the townhouse but no one ever answered the door. He reviewed the court order for withdrawal and redeposit of the money but could not determine the whereabouts of the money. The probate court therefore issued an order to show cause on its own motion directing Jolaine to appear and show cause why she should not be removed as conservator. At the hearing on March 23, 2010, the probate court removed Jolaine as conservator and trustee and appointed the public guardian as temporary conservator and temporary trustee. It appointed the public defender to represent conservatee Danny, authorized the public defender to review the trust, and provided that "the estate of the conservatee" will bear the costs of representation. It set a status review hearing for the conservatorship matter and trust matter for May 4.[5]

---

does not delegate any powers or discretions to the special trustee. And it does not provide for the special trustee to accept the appointment via signature. Jolaine's signature only "accept[ed] the Trusteeship."

[5] The record is unclear whether the probate court appointed the public guardian as temporary conservator only or as temporary conservator and temporary trustee. There is no formal order or reporter's transcript of the March 23, 2010 hearing. At the May 4 hearing, the probate judge stated that his notes from the March 23 hearing indicate that he appointed the public guardian as temporary conservator and temporary trustee; but the probate court's minute order specifies that the probate court appointed the public guardian as temporary conservator only. At the May 4 hearing, (1) the public guardian stated that his notes from March 23

At the hearing on May 4, 2010, county counsel, the public guardian's attorney, informed the probate court that Jolaine had been unable to deposit all seven Washington Mutual cashier's checks and possessed two for about $92,000 each. He added that one check had been mistakenly deposited in Danny's name, which placed Danny's government benefits at risk. He opined: "I think she got a little overwhelmed. Part of the reason is she doesn't have an identification card. So the banks were unwilling to accept her status as the trustee of the trust. There's—there's a house in the special needs trust as well, and so to sum everything up, the finances right now are a mess. [¶] We think this case is probably best suited for a private fiduciary given the amount of liquid assets, approximately $675,000 plus a house. I would ask the Court consider appointing a private fiduciary for the conservatorship and the trust. And then Ms. Allen can have an opportunity to get her counsel to perhaps explain all the decisions that she made with respect to the special needs trust."

The public defender asked "that the matter simply be continued without the Public Guardian's office acting as the trustee. Because my client may want to challenge the need for the trust and/or—the conservatorship and may also want to have a family member appointed [as conservator], perhaps other than his mother."

Jolaine agreed and detailed: "What we're requesting today is a continuance. And I would like to—Danny Reed has a desire and intention to present a petition to the Court for the dissolution of the conservatorship as he no longer needs the conservatorship of his person or of his estate. I would like to meet with the Public Guardian and bring the paperwork, the financial paperwork I should have. I have acted in good faith. I have never done anything inappropriate with the funds or the assets in the trust. And we would like to have a continuance so I can meet with [my lawyer] or another special needs attorney before an action like this is taken. So I would ask that you postpone any request that the Public Guardian attorney is making right now for a fiduciary and let it be family member as—when we're able to find out if this is going to be dissolved, the conservatorship. [¶] Danny should be able to choose somebody. And I can show where whatever monies have gone. I have never personally taken any monies out of his trust. So I think this is excessive. I don't believe it's needed at this time. But we're requesting a continuance so we can get everything straightened out and I'm agreeable to having an accounting in 60 days and showing where everything is."

indicated that the probate court appointed him as temporary conservator only, and (2) the public defender stated that his notes indicated that the probate court removed Jolaine as conservator and trustee and appointed the public guardian as temporary conservator and temporary trustee. The order to show cause directing Jolaine to appear at the March 23 hearing summons Jolaine in her capacity as conservator only.

County counsel objected: "The issue before the Court is not whether the temporary trustee of the trust should be appointed. It's whether it should be the Public Guardian over a private fiduciary, because the issue before the Court is then—Ms. Allen can correct me if I'm wrong—she placed $92,000 in the name of Daniel Reed in his own name which resulted under the special needs rules as income and so now his SSI is at risk. [¶] She acted in good faith but the problem is she didn't have an identification so banks weren't willing to work with her as they would a regular private fiduciary with an identification. I don't think we can wait for a temporary trustee to be appointed when Mr. Reed's SSI benefits are at serious risk."

Jolaine added: "Your Honor, I have a paper which we've drafted and I understand as trustee of the special needs trust states that I would have the powers of choosing a successor trustee. And I had wanted to choose my daughter, my 30-year-old daughter, Tristan, to be a co-trustee, successor trustee, in that she has picture ID, and she could go to the bank and they would accept her picture ID and allow the paperwork to proceed. I have the paperwork, but I haven't submitted it to the Court yet. She would assist me in handling the basic paperwork with the bank."

The probate court stated that "I don't have anything like that before me." It then extended the public guardian's temporary conservatorship until July 13, 2010, and ordered Jolaine to produce an accounting at that time. It indicated that "I'm also going to appoint a temporary fiduciary with regard to the trust" subject to further review on July 13. At this point, a probate court investigator initiated the following colloquy.

"[Probate court investigator]: Your Honor, one more on the fiduciary. Somebody from the court's panel for private fiduciary. I don't know if we have a panel—

"[Supervising court investigator]: We have a binder.

"The Court: From the binder.

"[Supervising court investigator]: Is the Court making a selection or is the Public Guardian making the selection?

"The Court: Any suggestions?

"[County counsel]: Well, usually we defer to the attorney for the conservatee or the court investigator. Normally we want to avoid selecting a particular.

"The Court: I didn't know whether anything was discussed.

"[County counsel]: So we would defer to the court investigator.

"[Supervising court investigator]: Okay."

The probate court then adjourned the May 4, 2010 hearing.

On May 25, 2010, the probate court appointed plaintiff as temporary trustee in an ex parte proceeding. The order reads in its entirety: "The Court—on its own motion—appoints Thomas Thorpe of Dragomir Fiduciary Services Inc., as Temporary Trustee of The Danny Reed Trust."

At the hearing on July 13, 2010, the parties agreed that the trust money was not missing and a formal accounting was unnecessary. The public defender then offered the following: "With respect to the conservatorship in general, however, [Danny] is very concerned about the cost that would be incurred in having the Public Guardian's office act as his conservator and he does want the conservatorship terminated. He feels he's able to take care of his own affairs. I have calendared a petition for September 14th to terminate the conservatorship and at that time, I think we're also going to be asking that a family member be appointed to control the special needs trust as well because he's concerned about accruing expenses having a private fiduciary in charge."

On July 13, 2010, plaintiff, via his probate attorney, Diane Brown, filed a petition to appoint himself permanent trustee and remove Jolaine as trustee. In the petition, he sought modification of the trust because (1) "There are several conflicting provisions that make it difficult to administer," (2) "Any Successor trustee is not entitled to compensation," and (3) "Drafting errors may cause unanticipated outcomes." As to the compensation issue, he detailed: "The trust provides under Article VIII that the trustee is entitled to receive reasonable compensation. This provision refers to Jolaine Allen. And the next sentence is 'A Special Trustee and any successor Trustee shall *not* be entitled to receive reasonable compensation for services in the administration of this trust.' (Emphasis added.)" He requested "that the last sentence of Article VIII be stricken." He attached his fee schedule to the petition as well as a complete amendment and restatement of the trust. He obtained a hearing for August 20.

On July 14, 2010, plaintiff wrote the following to Brown about the July 13 hearing: "Danny made it pretty clear yesterday that he does not want a professional fiduciary around, and that they want a family member as trustee. Because the fee issue is so consuming to the family, they will be pushing to replace me with that family member rather than sit back and just allow me to be appointed permanently."

On July 20, 2010, the probate court appointed the public defender to represent Danny in the trust proceeding.

On July 29, 2010, plaintiff filed an ex parte petition to release the trust money to him "for the payment of on going [sic] expenses of the trust and the beneficiary." At a hearing on July 30, the public defender asked for a continuance because Danny had not been notified of the hearing and objected to plaintiff withdrawing any money. Brown indicated that plaintiff "needs to go in and inspect the house to see the electrical problems indicated. . . . [¶] He needs at least enough money to pay inspectors to go into that house to see if it's even got adequate plumbing, if it's got adequate lighting. And he needs to be able to insure this house to protect it." The probate court continued the matter until August 2.

At the hearing on August 2, 2010, the public defender again objected to plaintiff's request: "And, Your Honor, we're opposed to any actions being taken on behalf of Mr. Reed at this time and we'd ask that it be deferred until the September 14th hearing wherein we have filed a petition to terminate the conservatorship. I will also shortly be filing a petition to have his special needs trust turned over to family members to become the trustees of that trust. And we do not want to have any fees generated. We do not want to have anything that would be financially detrimental to the trust or his assets done in between now and then. [¶] We'd ask for the Court to order they cease and desist in any actions that they intend to engage in. He has insurance on his property that is current. He is keeping the house payments current. And so there is no impending danger of his assets being placed in jeopardy. Also, he's very fearful that his assets will be squandered by way of needless generation of fees by these fiduciaries that have been appointed, whereas he has family members who are sophisticated in financial matters. They've been employed in the banking industry in the past, namely two sisters, who could take over for him with respect to the administration of the special needs trust."

Plaintiff's probate attorney (Sheri Sudweeks appearing for Brown) argued that the instant hearing was not "the proper proceeding of this petition today to decide who should be the trustee." She urged that plaintiff needed "the tools he needs to carry out his duties." She claimed that the bank accounts

were earning below 2 percent, which was against the interests of the trust, and informed that plaintiff had not yet entered the home for an inspection of deferred maintenance. The probate court commented that plaintiff had been placed in charge but "has no assets to do anything." When it declined a continuance, Danny offered the following: "Your Honor, in 1996 I was victimized by a drunk driver. Now, in 2010, I feel as though I'm being victimized again by Thomas Thorpe and his unnecessary practices, predatory practices. He's taking advantage of me while—I say predatory because he's taking advantage of me while I can't legally defend myself. [¶] In May 2010, Thomas Thorpe was forced upon me, against my will, as temporary—I emphasize at the time—as temporary trustee. I did not—I did not need nor want his services then. I do not need nor want his services now. I would move to have Thomas Thorpe removed immediately as temporary trustee and replaced by a member of my family. [¶] Judge Cain, please protect me and my—please protect my assets. I hope you will restore my full rights in my upcoming capacity hearing."

The probate court granted plaintiff's petition to release the trust funds.

On August 20, 2010, Danny filed an objection to plaintiff's petition for appointment as permanent trustee. He also filed a petition to remove plaintiff as temporary trustee and appoint Audelith as permanent trustee, which the probate court set for hearing on October 6. At the August 20 hearing on plaintiff's petition, the public defender asked to continue the matter until October 6. And he reiterated: "Mr. Reed does not want someone outside his family to be the trustee of his trust. He does not want to incur the increased expenses that that would result in." Brown disagreed: "Your Honor, it seems reasonable to me to grant the petition in its entirety, appoint Mr. Thorpe as trustee, have the hearing on October 6 and let the parties each present why Mr. Thorpe should be—or why the proposed person should be trustee." The probate court remarked that the issue was not Jolaine's removal but who would replace her and "with regard to the concern about the fees and everything else, if Genevieve [sic] becomes the successor on October [6], the fees issue will be of limited duration." It indicated that "I'm going to go ahead and grant the petition [to appoint plaintiff as permanent trustee] as requested."

On September 14, 2010, the probate court terminated Danny's conservatorship. It also held a hearing on the trust matter during which Brown asked the probate court to sign a formal order concerning the indicated order of August 20. The public defender objected because he had filed a motion to reconsider that order. He explained the following: "I have subsequently had the opportunity to look into the specifics of the requirements of a special needs trust,

which [plaintiff's probate attorney's] pleading was rather ambiguously premised on the fact that the original trust was somehow defective in accomplishing the needs of a special needs trust, and it had, quote, conflicting language which would defeat the administration of the trust. [¶] My subsequent examination of the document and the special needs trust requirements indicate that just is a fallacy, it's untrue, and so I filed a motion for reconsideration, which I've filed this afternoon, scheduled for October 6th, pointing out why Ms. Brown's assertion of this trust needed to be redrafted are incorrect, essentially needless. So I'm asking that the court reconsider its ruling in that regard, and I've filed those papers for hearing on the same day as our petition to appoint Audelith Reed as successor trustee, which is October 6th." Brown insisted that the California Rules of Court required the probate court to sign the order and the motion for reconsideration was premature because the probate court had not yet signed an order. The probate court declined to sign the order and continued the hearing until October 6.

On September 19, 2010, plaintiff wrote the following to Brown and his litigation attorney, Michael Desmarais: "My 3 greatest concerns in this case are the following: [¶] [(1)] ability to collect trustee and counsel fees when our fee petition is submitted to the court, [¶] [(2)] protecting trustee's liability on issues related to trustee's legal and dutiful control over the house and its cleaning/repairing in the face of counsel's open support and advocacy of tenants' resistance, and [¶] [(3)] the petition to remove me as trustee set for hearing October 6."

At the hearing on October 6, plaintiff appeared with Brown and Michael Desmarais. Desmarais asked for a continuance of 60 days so that plaintiff could "Petition for its appropriate approval [of accounting] and for payment of his fees." He added that "If in your discretion you want to basically ask him to resign, he will do so, but only after his accounting is approved and his fees have been ordered by Your Honor in Your Honor's discretion." The public defender replied: "Your Honor, I have two matters before the Court. One is a request for reconsideration of the Court's prior order which approved Mr. Thorpe as temporary trustee and also, I think, almost after the fact, approved Ms. Brown's redrafting or providing a new draft of the trust which I believe was drafted essentially to provide indemnification for her client and liability insulation for her client, not for the benefit of my client. And also there is the request to substitute Genevieve [*sic*] Reed as the trustee because she is a family member. She is willing to do it without cost to Mr. Reed and I believe that would be the most efficient thing for Mr. Reed and his trust. [¶] So, let me go to the motion for reconsideration, Your Honor, which essentially addressed whether or not there is any need to redraft the trust." At this point, Desmarais offered, "I can short circuit this by saying there's no need to redraft the trust. I would also suggest, Your Honor, there's no need to consider appointing Mr. Thorpe as the permanent trustee." The

probate court then accepted plaintiff's resignation as temporary trustee and appointed Audelith as temporary trustee. It appointed Audelith as permanent trustee on December 22.

During the four and a half months that plaintiff was the temporary trustee of the trust, he marshaled bank accounts, increased the insurance on Danny's home, and "attempted and ultimately entered the property and inspected it, and pressed for necessary clean-up and repair work."

Plaintiff filed his fee petition on November 22, 2010. He sought $65,844.08 for himself, $31,047.85 for Brown, and $11,879.14 for Desmarais. Danny and Audelith objected to the fee request by arguing that (1) the trust prohibited compensation to a successor trustee, and (2) plaintiff's appointment as temporary trustee was invalid as contrary to due process because it was accomplished ex parte. The trial court heard the matter over five days (Apr. 12–15, 19, 2011) and considered several hundred exhibits produced by plaintiff. It awarded plaintiff $27,006, Brown $19,540.61, and Desmarais $4,739.02.[6]

As to the trust-prohibition issue, the trial court explained the following in its statement of decision: "The Probate Court has the necessary jurisdiction and power to both appoint a successor trustee and to order payment for a temporary trustee regardless of the terms of the trust when it appears to the Court that the trust property or the interest of the beneficiary may suffer loss or injury. (Probate Code § 15642(e).) The Court has similar powers under Probate Code § 17206 when, in its discretion, it seems necessary and proper to proceed with the appointment of a temporary trustee. [¶] The Court finds that the provisions of the Danny Reed Trust are not dispositive of the fee issues and that the Court properly executed its powers."

## DISCUSSION

■ A trustee is entitled to compensation for its services either as provided in the "trust instrument," if that document "provides for the trustee's compensation" (Prob. Code, § 15680, subd. (a)),[7] or "reasonable compensation" where "the trust instrument does not specify the trustee's compensation" (§ 15681).

Section 15680, subdivision (a), specifically provides: "[I]f the trust instrument provides for the trustee's compensation, the trustee is entitled to be

---

[6] Danny informs us in his reply brief that plaintiff's recovery in the fee-petition trial generated a later fees-on-fees trial after which the trial court awarded plaintiff $146,556 for his attorney fees incurred in the fee-petition trial.

[7] Further unspecified statutory references are to the Probate Code.

compensated in accordance with the trust instrument."[8] This is a general principle of the law of trusts. (*Estate of Bissinger* (1964) 60 Cal.2d 756, 762 [36 Cal.Rptr. 450, 388 P.2d 682] [commenting on predecessor statute].) The cases consistently recognize the principle. (*Estate of Whitney* (1926) 78 Cal.App. 638, 649 [248 P. 754] ["Where an instrument by which a trust is created fixes the compensation of the trustees they cannot claim a larger sum. They are entitled to the amount specified and no more. [Citations.] Their acceptance of the trust will be held as an agreement to receive such compensation as the instrument directs."]; *Estate of Barton* (1950) 96 Cal.App.2d 234, 236 [214 P.2d 857] ["It is true that when an instrument by which a trust is created specifically fixes and determines the compensation of the trustee he is entitled to that amount and to no more."]; *Estate of Bodger* (1955) 130 Cal.App.2d 416, 424 [279 P.2d 61] ["The [trustor] has the right to specify the compensation to be paid a trustee performing services on his behalf and if he does so it is not within the power of the court to change, alter or modify such provisions, or to substitute its predilection for the expressed instruction of the [trustor]."].)

■ Here, the trust instrument specifically states that a successor trustee—plaintiff in this case—is not entitled to compensation. The probate court appointed plaintiff unconditionally, and plaintiff unconditionally accepted the appointment by performing duties.[9] (§ 15600, subd. (a)(1).) If plaintiff deemed the amount of compensation specified in the trust to be inadequate, he could have refused to act. (*Estate of Whitney*, *supra*, 78 Cal.App. at p. 650; 1 Cal. Trust Administration (Cont.Ed.Bar 2d ed. 2012) § 9.26, p. 504 ["If a trust contains a fee clause that a potential successor trustee believes will provide inequitably low compensation, the trustee should either condition acceptance on modification of the clause by the court or should refuse to accept the appointment until the current trustee has obtained a modification."].) "However this may be, the [trust] having limited the amount which [plaintiff] should receive as compensation for [his] services . . . and [plaintiff]

---

[8] Section 15680, subdivision (b), permits the court to allow greater compensation than the trust instrument provides under certain circumstances, "(1) Where the duties of the trustee are substantially different from those contemplated when the trust was created. [¶] (2) Where the compensation in accordance with the terms of the trust would be inequitable or unreasonably low . . . . [¶] (3) In extraordinary circumstances calling for equitable relief." But "An order fixing or allowing greater or lesser compensation under subdivision (b) applies only prospectively to actions taken in administration of the trust after the order is made." (§ 15680, subd. (c).)

[9] Before the appointment order, plaintiff wrote the supervising court investigator that he was willing to accept the trusteeship and conservatorship "subject to my attached fee schedule." But the probate court's order was unconditional, plaintiff began performing duties, and the trust was never amended to eliminate the no-compensation provision.

having accepted the[] trust, [he is] bound thereby, and the order of the court allowing [him] a greater amount is without authority." (*Estate of Whitney, supra*, at p. 650.)

Plaintiff offers no reasoned explanation why the principle at issue is not operative in this case. And he implicitly recognized in the probate court that the principle is operative in this case by his attempt to modify the trust to eliminate the no-compensation clause. He seems to rely, however, on the trial court's reasoning.

The trial court suggested that the judgment was justified under the power given it under sections 15642, subdivision (e), and 17206. We disagree.

■ " 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' [Citation.] Generally, a statute should be construed so as to harmonize, if possible, with other laws relating to the same subject. [Citation.] To harmonize two statutes relating to the same subject, a particular or specific statute will take precedence over a conflicting general statute." (*Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 821 [90 Cal.Rptr.2d 709].)

Section 15642, subdivision (e), states: "If it appears to the court that trust property or the interests of a beneficiary may suffer loss or injury pending a decision on a petition for removal of a trustee and any appellate review, the court may, on its own motion or on petition of a cotrustee or beneficiary, compel the trustee whose removal is sought to surrender trust property to a cotrustee or to a receiver or temporary trustee. The court may also suspend the powers of the trustee to the extent the court deems necessary."

Section 17206 states: "The court in its discretion may make any orders and take any other action necessary or proper to dispose of the matters presented by the petition, including appointment of a temporary trustee to administer the trust in whole or in part."

It is apparent from the plain words of the two statutes in question that the provisions generally confer authority on the probate court to appoint a temporary trustee. There is neither mention of compensation generally nor conferment of specific authority to compensate a temporary trustee differently from the amount specified in the trust instrument. The trial court's construction of the statutes is not only contrary to the plain words but also operates to eviscerate the specific statute that limits the compensation of a trustee to the amount fixed by the trust instrument.

## DISPOSITION

The judgment is reversed. The trial court is directed to deny plaintiff's petition.

Elia, J., and Mihara, J., concurred.