[Civ. No. 10846.   Third District.   Feb. 23, 1965.]

SILAS S. WILKINS et al., Plaintiffs and Appellants, v. JAMES BILL SAWYER, Defendant and Respondent.

Eugene T. Gualco and Reynolds J. Gualco for Plaintiffs and Appellants.

McGregor, Bullen & Erich and Norwood R. Erich for Defendant and Respondent.

PIERCE, P. J.—A collision occurred between the vehicle of an eastbound motorist, plaintiff Silas Wilkins, driving along a county road, and a station wagon driven by defendant Sawyer entering that road from a private driveway. High weeds growing along the south side of the road and west side of the driveway impaired the line of vision of each driver. Plaintiff Mrs. Wilkins, a passenger in her husband's car, sued Sawyer for her personal injuries suffered. Wilkins sued him for the damages to his vehicle. Both claimed Sawyer's negligence. Sawyer, denying negligence, pleaded Wilkins' negligence in a cross-complaint and prayed for recovery of the damages to his car. The jury brought in general verdicts denying relief to all complainants. The court entered judgment on the verdicts and denied the plaintiffs' motion for a new trial. Their contentions on appeal are that Sawyer was guilty of an unexcused violation of a duty-to-yield-right-of-way statute as a matter of law; also that in any event the jury could not justifiably find Sawyer nonnegligent after having found Wilkins nonnegligent. We find both contentions untenable.

The accident happened on July 11, 1961, between 5 and 5:30 p.m., on the Walnut Grove-Thornton Road at a point at or near where the Walnut Grove-Marina Road joins the other road from the north but does not cross. Almost directly opposite a private driveway enters the Walnut Grove-Thornton Road from the south. It extends along the westerly boundary

of the premises of the S & W Tire Shop. On these premises is a small trailer court. The graveled driveway, approximately 30 feet wide, serves as a means of ingress and egress between the trailer court and the county road. Another driveway of the tire company on the east end of its premises enters the county road. Westerly from the point of said driveway the county road makes a curve to the south. The area within the right angle formed by the county road and this driveway was, at the time of this accident, foliated by weeds the height of which was variously estimated at from 7 to 10 feet. The curve in the road and the height and thickness of these weeds combined to hide from view the eastbound traffic on the road from motorists approaching the road on the driveway and vice versa. According to the investigating highway patrol officer, a car eastbound on the road would have been unable to see a vehicle in the driveway stopped at the southerly edge of the road for more than 75 feet. A driver sitting in a car so located and about to enter the road would, according to this officer, find his line of vision even more limited. He would be unable to see an approaching car eastbound on the county road until it had reached a point 40 to 50 feet away.

According to respondent Sawyer (and this was the theory of his case and defense) he, with his wife, just prior to the time of the accident, had left the trailer area of the S & W Tire premises in their car and had proceeded along the driveway, intending to enter and cross the road and to turn into the westbound lane. Their destination was Walnut Grove. Sawyer stopped at the southerly edge of the road and waited while three westbound cars passed. (Another vehicle was behind him, also waiting to enter.) After the cars had passed, Sawyer looked to the right, then to the left and, since the way appeared to be clear, started across the road. He described the speed of his car as "creeping." He said: "I sit there and let three cars go by before I ever pulled out of there, and I know that road was clear just as much as I am sitting here today, and I pulled out and the first thing I saw is that car on top of me." Seeing the other car, Sawyer pressed the accelerator pedal which caused his wheels to spin and his car to skid.

Plaintiff, with his wife riding beside him, was driving eastbound from Walnut Grove. Back approximately 400 feet from the point of the accident the road runs along a levee. While driving on the levee road he had been traveling 15 to 20 miles per hour. Just before the accident he had accelerated to 35 miles per hour. (The posted speed for the section of the

county road involved was 65 miles per hour.) Because he worked in a building next to the S & W Tire Shop, Wilkins was familiar with the premises and surrounding area, and knew of the existence of the driveway and inferentially must have known about the high weeds obscuring the view of motorists entering the road from the driveway.

After the accident Wilkins told the investigating highway patrolman, according to the latter, that he had first seen the Sawyer car "in front of me," at which point he, Wilkins, was traveling 35 miles per hour; that he was unable to stop in time to avoid an impact; that he had applied his brakes with as much pressure as possible.

Sawyer's account regarding Wilkins' speed was different. He said: "I seen he was coming like a bat out of heck." Although he had hesitated to fix Wilkins' speed (and had refused to do so when giving his deposition), he gave as his estimate that it was between 60 and 65 miles per hour.

Wilkins' testimony did not accord in all respects with the story he had given the officer at the scene of the accident as reported by the latter. At the trial he testified that as he approached the point of the accident he had first noticed two cars stopped at the driveway entrance, one a "semi-" with the Sawyer vehicle stopped beside it on the east; that suddenly the Sawyer car pulled out in front of him and he had "hit the brakes."

Wilkins' car struck the Sawyer vehicle, a station wagon, in the area of its left rear door. The car spun around and came to rest facing the west. The Wilkins' car stopped within a few feet of the point of impact.

The accident resulted in personal injuries to Mrs. Wilkins and damages to both cars, the nature and extent of which do not concern us on this appeal.

The evidence stated above, depending upon which witnesses were believed, and whether the whole or only a part of the testimony of any given witness was accepted, could have resulted in several possible verdicts. The jury could have found the accident due to the sole negligence of either Sawyer or Wilkins, with no contributory negligence; or it could have found that both were negligent with the negligence of both proximately contributing to the accident; or it could have reached the conclusion (and this it did as the discussion hereinafter will show) that neither Sawyer nor Wilkins was negligent.

Obviously, it did not find Sawyer solely negligent or its

verdict would have been for plaintiffs Wilkins, husband and wife. It did not find Wilkins solely negligent or it would have found in favor of Sawyer on his cross-complaint. And it did not find that both Wilkins and Sawyer were negligent. Had it done so its duty would have been to return a verdict for Mrs. Wilkins. She was clearly innocent of wrong; her cause of action for her personal injuries is her separate property (Civ. Code, § 163.5); and contributory negligence of her husband would not bar her right of recovery. (*Self* v. *Self*, 58 Cal.2d 683 [26 Cal.Rptr. 97, 376 P.2d 65]; *Estate of Simoni*, 220 Cal.App.2d 339, 342 [33 Cal.Rptr. 845]; *Lichtenauer* v. *Dorstewitz*, 200 Cal.App.2d 777 [19 Cal.Rptr. 654].) The jury was correctly instructed in this regard and it must be presumed it followed the court's instructions. (*Zuckerman* v. *Underwriters at Lloyd's, London*, 42 Cal.2d 460, 478 [267 P.2d 777].) The implied finding of the jury, therefore, must have been that neither party was negligent.

It is appellant's contention that this finding cannot stand. It urges that (1) the evidence showed Sawyer to have been guilty of negligence as a matter of law because he violated the provisions of Vehicle Code section 21804,[1] (2) that in any event a finding of Sawyer's nonnegligence could only be justified by a finding of Wilkins' negligence which, as we have seen, the jury did not make. Neither of these contentions is sound.

In answer to the first proposition it cannot be said as a matter of law that Sawyer was guilty of an unexcused violation of Vehicle Code section 21804. Sawyer, under that section, was required to yield the right of way to vehicles driving along the public road. An entrant from a private driveway onto a road is not always chargeable for negligence if a collision occurs. (*Pandell* v. *Hischier*, 166 Cal.App.2d 693 [333 P.2d 762].) In the case cited the court, after quoting the Vehicle Code section, then numbered 553, says (on page 695): "... Literally, this section would require the prospective entrant from a private road to yield the right of way to all vehicles on the highway regardless of where they were. This would be an unreasonable interpretation. For that reason, the courts have interpreted the section to mean that

---

[1]Vehicle Code section 21804 at the time of this accident provided as follows: "The driver of a vehicle about to enter or cross a highway from any private property, or private road or driveway or from an alley not exceeding a width of 22 feet or from any alley as may be defined by local ordinance shall yield the right-of-way to all vehicles approaching on the highway."

a prospective entrant from a private road may lawfully enter a highway so long as there is no vehicle so near as to constitute an immediate hazard. [Citations]''

Did Wilkins' vehicle constitute an immediate hazard? In one sense it certainly did because an accident took place. And in the same sense it could be concluded that Sawyer disobeyed the Vehicle Code section, even though he stopped, looked, saw nothing (because nothing was visible) and the status of Wilkins' car as an ''immediate hazard'' was only such because of Wilkins' misjudgment of a safe rate of speed under the combined circumstances—a curve in the road and the presence of the high foliage.

But disobedience of the statute is only presumptively negligent. A jury can still find that the presumption has been overcome if the facts warrant a finding that disobedience of the statute was excused or justified.[2] (*Alarid* v. *Vanier,* 50 Cal.2d 617, 621 [327 P.2d 897].)

Here, therefore, we need not labor the nice question whether the test of ''immediacy of hazard'' is, in every case, to be wholly objective, because the facts in this case, regardless of their sufficiency to show observance of the statute, *are* sufficient to justify the jury's conclusion that disobedience was excused.

Sawyer had allowed all visible traffic to pass. When he entered the highway it was, so far as visibility from his point of observation was concerned, entirely clear—i.e., if the jury accepted his account of what happened. To have held him guilty of an unexcused violation of the section under the circumstances, the jury would have had to find that no one could possibly nonnegligently enter that road from that driveway at least without having first posted a lookout sufficiently far down the road to warn of the possibility of approaching eastbound traffic beyond any entrant's range of vision. The jury was not required to believe that these were the minimum requirements of a driver exercising ordinary care. The test of the behavior of the ''reasonably prudent and cautious man'' applies in determining whether a party has or has not acted in subservience to this section. (*Dickison* v. *LaThorpe,* 124 Cal.App.2d 190, 194 [268 P.2d 164].) This is one of those cases where the question is one of fact for the jury's determination. That is generally

---

[2]Here the jury was fully and correctly instructed by the court as to the law in this regard.

true where violation or compliance with a "yield statute" is involved.

The facts are not unlike those in *Malinson* v. *Black,* 83 Cal. App.2d 375, 378 [188 P.2d 788]. There plaintiff had entered U.S. Highway 101 and his car came into collision with a car driven by defendant along said highway. Plaintiff had not entered from a private driveway but U.S. 101 was an arterial at which plaintiff had been required to stop and had stopped, to yield the right of way to passing vehicles on 101 close enough to constitute a hazard. It was held that the fact that the collision had occurred did not mean that plaintiff had been guilty of contributory negligence as a matter of law. The court pointed out that the occurrence of the collision did indicate a mistake in judgment, but the court says (on page 378): "Whether such a mistake of judgment constituted negligence was a question of fact." It was also held that every mistake of judgment is not negligence; that mistakes are made even in the exercise of ordinary care.

Appellants' second proposition that the jury, in denying Sawyer relief, must necessarily have found him negligent is a non sequitur. It is true that all of the cases to which we have been referred, holding that one party's mistake of judgment was not negligence, have happened to be cases where the negligence of the other party was a factor. (See *Malinson* v. *Black, supra,* 83 Cal.App.2d 378; *Frediani* v. *Ota,* 215 Cal.App.2d 127 [29 Cal.Rptr. 912]; *Silva* v. *Pim,* 178 Cal. App.2d 218 [2 Cal.Rptr. 860].) Therefore, in that one respect this case, with the jury's implied finding that both drivers were nonnegligent, possesses some novelty. But this novelty is without significance to affect the logic of the rule or its validity. The same considerations which motivated and justified the jury in finding that Sawyer's mistake of judgment was nonnegligent must have prompted it to find Wilkins' mistake of judgment also to be within the limits of an exercise of ordinary care.

The posted speed for the Walnut Grove-Thornton road in this area was 65 miles per hour. This does not mean that a motorist driving within that limit is always free from negligence. (Vehicle Code § 22350; *Reynolds* v. *Filomeo,* 38 Cal.2d 5, 13 [236 P.2d 801].) Wilkins was aware of the existence of the driveway, the uses commonly made of it, the curve in the road and the high weeds. He must also have been aware of the limits of his visibility. If the jury believed, as Sawyer testified, that Wilkins was driving 60 to 65 miles

per hour it could have found justifiably that he was negligent. It could also have believed that Wilkins' speed, as *he* testified, did not exceed 35 miles per hour; or it reasonably could have believed that his speed was more than 35, but less than 60, miles per hour—too fast under the now known circumstances which hindsight establishes—but not necessarily negligence if it believed that a momentary forgetfulness of the perilous circumstance was just a mistake of judgment by a driver exercising ordinary prudence.

The illustrations which we have given of the possibilities permitted from the evidence do not exhaust all conceivable situations. Perhaps an electronic computer would be needed to resolve all combinations of possibly believed and disbelieved items which would reasonably justify a finder of fact in concluding that both acted as reasonable and careful drivers under the circumstances.

The implied finding that both Wilkins and Sawyer were free from negligence should not be interpreted as our holding that this was an unavoidable accident. (The theory of "unavoidable or inevitable accident" does not appear to have been raised. See *Bridgman* v. *Safeway Stores, Inc.*, 53 Cal.2d 443, 449 [2 Cal.Rptr. 146, 348 P.2d 696].) It merely means that the parties before the court were not the ones responsible.

The circumstances here could justify a reasonable belief by the jury that it was the presence of the 7- to 10-foot high weeds creating a "blind" corner at the point of entry onto the curving county road which was the real cause of this accident. Who the party responsible for the weed condition was, and whether a duty of care existed are questions not before us and regarding which we express no opinion.

The purported appeal from the nonappealable order of the trial court denying motion for new trial is dismissed. The judgment is affirmed.

Friedman, J., and Sparks, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.