[No. G044955. Fourth Dist., Div. Three. June 25, 2012.]

SCC ACQUISITIONS, INC., et al., Cross-complainants and Appellants, v. CENTRAL PACIFIC BANK, Cross-defendant and Respondent.

COUNSEL

Jeffrey S. Benice for Cross-complainants and Appellants.

Frandzel Robins Bloom & Csato and Thomas M. Robins III for Cross-defendant and Respondent.

OPINION

MOORE, J.—Appellants SCC Acquisitions, Inc., and Bruce Elieff (collectively appellants), guarantors on a loan by respondent Central Pacific Bank (the bank) to Fillmore Sun LCC (Fillmore Sun), appeal from a judgment of the superior court denying them relief and finding in favor of the bank on appellants' cross-complaint. Appellants contend the trial court erred in instructing the jury. Finding no error, we affirm.

## I

## FACTS

In August 2005, the bank lent Fillmore Sun over $7.3 million for costs involved in purchasing certain property and for "paying the predevelopment costs related to the development of the Property." Under the terms of the one-year loan, Fillmore Sun would pay only the interest on the loan until the maturity date of the loan, August 24, 2006, at which time the entire principal would be due. The loan also contained a provision affecting the maturity date: If there were no uncured default outstanding at the time of the maturity date, in the bank's sole and absolute opinion and judgment the maturity date would be extended to February 24, 2007. The clause also provided "[t]he granting of such extension, however, is not intended to imply any agreement for any other or further extension of the Maturity Date." Appellants guaranteed payment of the loan.

The loan maturity date was extended five times, the last of which occurred on November 28, 2007, extending the maturity date from October 26, 2007, to April 26, 2008. It appears that after the last extension was granted, the bank did its quarterly review of the risks posed by its various loans and downgraded the Fillmore Sun loan from 4W (a standard loan) to a 6 (a substandard loan), requiring the bank to set aside over $1 million as a reserve to protect against a possible loss on the loan. Although we have not been cited to supporting evidence in the record on appeal, the parties appear to

agree a late January 2008 internal bank memorandum noted that if a decision was made to not renew the loan, the borrower should be notified of the decision at that time.

On March 14, 2008, the bank sent a term sheet for the Fillmore loan. The term sheet presented terms "for a possible restructure" of the loan and noted the term sheet was "for discussion purposes only, is subject to Bank approval and should not be construed as a commitment to lend." The proposed terms included a one-year interest-only payment at a loan-to-value rate of 50 percent. It also proposed any such loan should "close no later than [March 31, 2008]."

On April 16, 2008, the bank decided to sell a number of its outstanding loans, including the Fillmore Sun loan, in a loan pool sale. Prior to that time, the bank did not anticipate selling the Fillmore Sun loan. In July 2008, the bank sold the loan to Gray 1 CPB, LLC (Gray 1), in the loan pool sale. Fillmore Sun was in default on the loan at that time. Gray 1 then sued the guarantors. It filed suit against SCC in September 2008, and subsequently filed suit against Elieff, as his guarantee was to pay if SCC failed to perform.

Appellants cross-complained against the bank. The causes of action included rescission based on sham guaranties, breach of contract and the implied covenant of good faith and fair dealing, promissory estoppel, and intentional fraud based on suppression of facts. The parties agree phase one of the trial resulted in a $9.1 million judgment against appellants and in favor of Gray 1. Appellants' cause of action for rescission based on sham guarantees was tried in this phase of the trial. Appellants have not appealed from that judgment.

In the second phase of the trial, the court impaneled a jury on a number of appellants' remaining causes of action, including fraud. Appellants' theory of liability was that while the original loan and the loan extensions all called for interest-only payments until the maturity date of the loan, at which point the entire principal was due, the bank led Fillmore Sun and appellants to believe it would extend the loan as a matter of course. Appellants alleged that prior to the April 26, 2008 maturity date on the last extension, the bank "wanted out of the California residential real estate market" and decided to sell its existing loans—including the loan to Fillmore Sun—to the highest bidder.

The jury rendered special verdicts. It found the bank made no false representations of an important fact to appellants and that the bank made a promise to appellants, but the bank intended to perform the promise when the promise was made. The jury also found the bank intentionally failed to disclose an important fact to appellants which could not have reasonably been

discovered by appellants, but it was done without an intent to deceive. The court then found in favor of the bank and adjudged that appellants take nothing by their cross-complaint.

## II

## DISCUSSION

Appellants contend the trial court prejudicially erred when it instructed the jury pursuant to two special instructions requested by the bank. "The propriety of jury instructions is a question of law that we review de novo. [Citation.]" (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82 [89 Cal.Rptr.3d 34].) If an instruction is found to be erroneous, reversal is required only when "it appears probable that the improper instruction misled the jury and affected [its] verdict. [Citation.]" (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)

Before addressing the jury instruction issues, we briefly address another matter. The bank asks that we dismiss the appeal for appellants' violation of California Rules of Court, rule 8.130(a)(2) (failure to designate points to be raised on appeal when less than all reporter's transcripts are designated as the record on appeal) and to strike portions of appellants' opening brief for violation of California Rules of Court, rule 8.204(a)(1)(C) (failure to support factual allegations with citation to record). This is not the first time counsel for appellants has failed to cite to the record as required by court rules. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [94 Cal.Rptr.3d 802].)[1] We decline the bank's requests to dismiss and to strike portions of appellants' opening brief because the bank did not file separate motions seeking such relief. (Cal. Rules of Court, rule 8.54(a).) We have not, however, considered factual allegations contained in appellants' opening brief unsupported by reference to the record on appeal or which, citing to the record, are not supported by the record. (*Berg v. Taylor* (2007) 148 Cal.App.4th 809, 812, fn. 2 [56 Cal.Rptr.3d 140].)

### *The First Instruction*

Pursuant to the bank's special instruction No. 3, the court gave the following instruction: "You have heard evidence of statements in Central

---

[1] At oral argument, counsel said he was trial counsel, not appellate counsel, in *Doppes v. Bentley Motors, Inc., supra,* 174 Cal.App.4th 967. When pressed he said his name may have been on the briefs. That is of no moment. (See *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1100 [142 Cal.Rptr.3d 646] ["attorneys who appear on all of the pleadings and papers filed for the plaintiffs in the underlying case cannot avoid liability for malicious prosecution merely by showing that they took a passive role in that case . . ."].)

Pacific Bank's credit memoranda contemplating that if, by the end of January 2008, a decision has not been made to extend the loan the borrower should be notified of such decision by that time. You are instructed that such statements in the credit memoranda by themselves do not create a legal duty on the part of the Bank to do so." Appellants claim the instruction is contrary to law. We disagree.

██ " '[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.' [Citations.]" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 868 [76 Cal.Rptr.3d 325].) "A duty to speak may arise in four ways: it may be directly imposed by statute or other prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an incident of a relationship between the defendant and the plaintiff; and it may arise as a result of other conduct by the defendant that makes it wrongful for him to remain silent." (*Id.* at p. 867.)

██ Appellants do not contend disclosure of the decision to not renew the loan was required by statute. Neither do they contend an obligation to disclose was assumed by contract or that there existed a fiduciary duty on the part of the bank to disclose. Rather, appellants appear to argue a duty to disclose arose based on representations by the bank—presumably issuance of the March 14, 2008 term sheet—and the failure to disclose the decision to not renew the loan materially qualified the terms and conditions set forth in the term sheet. The instruction did not misstate the law. Contrary to appellants' assertion, the instruction did not inform the jury the bank had no duty to disclose a decision not to renew the loan. It merely informed the jury that the statement in the memorandum did "not create" a duty to disclose. That the bank thought it appropriate to notify the borrower of a decision not to renew the loan did not, under any theory, "create" a duty to notify the borrower. Such a duty, if one ever existed, would have arisen based on "other conduct by the defendant that makes it wrongful for him to remain silent" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LCC, supra,* 162 Cal.App.4th at p. 867), not on an internal policy decision to give notice the bank was not otherwise required to give. Accordingly, we find the trial court did not err in instructing the jury pursuant to the bank's special instruction No. 3.

*The Second Instruction*

The court also instructed the jury in accordance with the bank's special instruction No. 4: "The Term Sheet dated March 14, 2008 sent by the Bank to Fillmore Sun . . . does not, by itself, (1) constitute a binding commitment to extend the loan on the terms stated therein or (2) constitute a representation or promise to extend the loan on the terms stated therein on which a claim or fraud or false promise can be based." Appellants do not attempt to demonstrate the instruction is a misstatement of law, other than merely pointing out a misrepresentation may be established by conduct. (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 [54 Cal.Rptr.2d 468].) Appellants' reliance on our opinion in *Thrifty-Tel, Inc. v. Bezenek* is misplaced. There, the children of the Bezeneks used another individual's access code to gain access to Thrifty-Tel's long distance network. (*Id.* at pp. 1563–1564.) In answer to the Bezeneks' contention there had been no misrepresentation, we held the use of another's access code constitutes an implied representation that the caller is authorized to make the telephone call. (*Id.* at pp. 1567–1568.)

Here, the face of the term sheet plainly states it was not a commitment, representation, or promise to renew the loan on the terms set forth therein: "Please be advised that this is *for discussion purposes only*, is *subject to Bank approval* and *should not be construed as a commitment to lend*." (Italics added.) It could not have been clearer. Additionally, the term sheet provided the loan must close no later than March 31, 2008, 16 days before the maturity date on the last extension, and it was conditioned on a previously unagreed-to 50 percent loan to value, which could have required a substantial payment of principal on the then existing loan. Appellants cite to no evidence in the record indicating the parties agreed to the terms in the term sheet by the suggested closing date. What is more, appellants disputed the value of the property subject to the loan and, therefore by implication, the amount of principal that would have to be paid to make the loan amount 50 percent of the property's value.

The instruction did not misstate the law. As the face of the term sheet indicated in the most clear language, it was not a promise to extend the loan. The term sheet itself could not be deemed a misrepresentation that the loan would be extended. Thus, it could not, as the instruction stated, form the basis of a claim of misrepresentation "by itself." That, of course, does not mean the term sheet could not be considered in conjunction with other evidence to support a cause of action for misrepresentation. Therefore, the court did not err in instructing the jury pursuant to the bank's special instruction No. 4.

## III

## DISPOSITION

The judgment is affirmed. The bank shall be entitled to recover its costs.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.