[No. B240348. Second Dist., Div. Four. Apr. 9, 2013.]

MICHEAL SPRIESTERBACH, Plaintiff and Appellant, v.
JANICE HOLLAND, Defendant and Respondent.

COUNSEL

McGuire Coats, Wendy McGuire Coats; The Simon Law Group, Robert T. Simon and Brad M. Simon for Plaintiff and Appellant.

Law Offices of Cleidin Z. Atanous, Cleidin Z. Atanous; Clasen, Raffalow & Rhoads and Perry Forrester for Defendant and Respondent.

OPINION

SUZUKAWA, J.—This appeal arises out of a collision between a bicycle ridden by plaintiff Micheal Spriesterbach and a car driven by defendant Janice Holland. Spriesterbach sued Holland for negligence, alleging that he suffered a serious shoulder injury as a result of the collision. The jury returned a verdict for Holland, finding by special verdict that she was not negligent.

Spriesterbach appeals from the resulting judgment and denial of his motion for new trial, urging that the trial court made two prejudicial instructional errors. Because we conclude that neither alleged error was prejudicial, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Background*

On March 10, 2010, Spriesterbach left Santa Monica College (SMC) and began riding home on his bicycle. Initially, he rode on the right-hand (south) side of National Boulevard, traveling in the same direction as the vehicular traffic. When he got to the intersection of National Boulevard and Barrington Avenue, he crossed to the sidewalk on the opposite (north) side of National Boulevard, where he continued to travel east. As he approached a supermarket parking lot on his left, he saw a car, driven by Holland, stopped at the threshold between the parking lot exit and the sidewalk. Holland did not see Spriesterbach, and she began to move forward just as he was directly in front of her car. Holland's car hit Spriesterbach's left bicycle pedal, causing the bicycle and Spriesterbach to fall to the street.

Following the collision, Spriesterbach suffered ongoing pain in his left shoulder and ultimately had surgery to repair a tear in the labrum in his left shoulder. He incurred medical bills in excess of $80,000.

Spriesterbach filed the present action against Holland on August 20, 2010. He alleged two causes of action, for general negligence and motor vehicle liability. Holland filed a general denial and asserted 11 affirmative defenses, including that Spriesterbach's own negligence was the cause of the accident.

### II. *Trial*

#### A. *Testimony*

The case went to trial on January 5, 2012. The testimony at trial relevant to the present appeal is as follows:

##### 1. *Micheal Spriesterbach*

On March 10, 2010; Spriesterbach finished his classes at SMC and began riding home on his bicycle, traveling three to five miles per hour. The ride home generally took him 30 to 45 minutes. Initially, Spriesterbach rode on the right-hand side of National Boulevard, traveling in the same direction as the vehicular traffic. When he got to Barrington Avenue, he saw construction signs indicating that the sidewalk was closed ahead. He decided not to stay on the right side of the street because there were orange cones and tape near the construction that made it a "tight squeeze for a bicyclist and a car to stay in that same lane." It "didn't look safe to me." Thus, he crossed the street and

"took the sidewalk until I got to a safer crossing like a major street like Sawtelle or Sepulveda where it would be easy for me to cross at a light."

As he continued riding on the sidewalk adjacent to National Boulevard, he rode next to a hedge and wall separating the sidewalk from an adjacent supermarket parking lot. He noticed Holland's car at a "dead stop" at the threshold of the parking lot and the sidewalk. Spriesterbach could not tell whether Holland saw him because there was a glare on her windshield. He did not do anything to get her attention because he "just assumed that she was at a stop sign and she was either waiting for me to cross or she was waiting for like a gap in the traffic to pull out and safely merge into National Boulevard." He "just felt that she noticed me or she was waiting for traffic to die down to make a safe merge into National Boulevard."

As he rode in front of Holland's car, she pulled forward and hit his left pedal, causing the bicycle to fall over. Spriesterbach's handlebar hit the emblem on Holland's car and Spriesterbach's shoulder landed on the hood of the car. When Holland stopped her car, Spriesterbach "fell off the hood of the car into National Boulevard." Holland continued to move after the impact, stopping two to three feet from the threshold of the parking lot and the sidewalk.

Spriesterbach called 911, and both the police and an ambulance responded. Spriesterbach elected not to go to the hospital because he was a full-time student and did not have money to pay for a hospital visit. He had pain in his left shoulder, which increased several hours after the accident.

Three days after the accident, Spriesterbach saw Dr. Rajan Patel. Dr. Patel ordered an X-ray and an MRI and told Spriesterbach he had torn the labrum in his left shoulder. Dr. Patel prescribed anti-inflammatory medication and 12 sessions of physical therapy. Spriesterbach could not tolerate the medication and was able to go to only two physical therapy sessions.

Initially, Spriesterbach believed he was getting better. Subsequently, however, the pain "kept coming back. It stayed longer. It just kept being uncomfortable sitting down at my work, at my station, typing, doing my necessary duties. I would have to get up a lot and move around. I was continually taking Advil . . . . I was taking those for a while, and it was just really uncomfortable for me to do my daily activities with my shoulder in constant pain." Eventually Spriesterbach had surgery, which was followed by physical therapy. Spriesterbach's medical expenses were close to $80,000.

Before the accident, Spriesterbach had never had any problems or pain in his left shoulder. Afterwards, he could not lift more than five pounds with his

left arm. Even after the surgery, his mobility in his left arm was limited and he continued to experience pain.

### 2. Dave King

King is a forensic engineer who reconstructs accidents. He testified for Spriesterbach that based on the area of impact indicated by the police report, Holland's car hit Spriesterbach's bicycle at the "inboard arrow" of the parking lot (i.e., the parking lot entrance), not "outboard arrow" (the parking lot exit). King assumed, based on the physical evidence, that Holland's car was traveling four to six miles per hour at impact and that Holland accelerated before hitting Spriesterbach. He also assumed, because Spriesterbach testified that his bicycle was in the lowest gear, that Spriesterbach was traveling three to five miles per hour immediately before the accident.

Based on these assumptions, King estimated that Spriesterbach would have been visible to Holland for four to seven seconds before the impact. If Holland had instead exited over the exit arrow, Spriesterbach would have been visible to Holland for 2.2 to 3.4 seconds before impact.

### 3. Janice Holland

Holland testified that upon leaving the Ralphs parking lot about 4:40 p.m., she came to a complete stop behind the line separating the parking lot from the sidewalk. She was "at the very western most exit which is by the wall," such that the exit arrow "was probably close to underneath . . . where the driver position would be, not in the middle of the car." She was not positioned over the entrance arrow because "[i]t would have been deadly to do that because that's where people are entering." She looked right and left and then "inched my foot off the brake to creep out while I was looking to see beyond the wall." She did not see Spriesterbach as she did so. As she took her foot off the brake and began to move forward, Spriesterbach rode directly in front of her and she drove her car into him. She immediately braked and stopped about 18 inches into the sidewalk area. She saw Spriesterbach make contact with the hood of her car; he then fell forward and disappeared from her view. He had been coming from the right, opposite the flow of traffic on the roadway.

Holland immediately got out of her car and asked Spriesterbach if he was okay. He said, "You fucking bitch. I'm going to sue you." He picked up his bicycle and threw it, and then picked it up again and threw it against a tree. He pulled earplugs from his ears and called the police.

### 4.  *Henricus Jansen*

Jansen is an engineer and an accident reconstruction expert. He testified for Holland that in performing his analysis, he assumed Holland had been sitting eight feet from the front of her car and was as far away from the wall as possible, giving her the best possible line of sight in the direction from which Spriesterbach was traveling. He noted that the trip from SMC to Spriesterbach's apartment is about five miles, and he assumed, as Spriesterbach had testified, that the trip generally took him 30 to 40 minutes. Jansen said if that distance and time were converted to speed of travel, then Spriesterbach would have been traveling about eight to 10 miles per hour, equating to a cruising speed of 10 to 12 miles per hour.

Based on the foregoing, Jansen said that the distance Spriesterbach traveled from the time he first became visible to Holland to the point of contact was about 11 feet. If that distance were traveled at a speed of 10 to 12 miles per hour, it would have taken Spriesterbach 0.6 to 0.7 seconds to get to the point of contact. Jansen said it is generally accepted that "perception reaction time"—i.e., the time needed for the brain to detect and respond to a potential hazard—is about 1.5 seconds. Jansen thus concluded that given the visibility and Spriesterbach's speed, there was not enough time for Holland to perceive and react to the hazard posed by Spriesterbach.

### B.  *Verdict and Judgment*

The jury returned a verdict for Holland, finding by special verdict that she was not negligent. The jury did not reach the issues of Spriesterbach's contributory negligence and damages.

The court entered judgment and served notice of entry of judgment on January 10, 2012. Spriesterbach made a motion for a new trial, which the court denied on March 8, 2012. Spriesterbach timely appealed.

### DISCUSSION

Spriesterbach contends the trial court made two prejudicial instructional errors. First, the court refused to instruct that if the jury found Holland violated Vehicle Code section 21804,[1] it must find she was negligent per se. Second, the court instructed that Spriesterbach was negligent per se because immediately before the accident, he had been traveling on the sidewalk against the flow of traffic, in violation of section 21650.1. We discuss these issues below.

---

[1] All undesignated statutory references are to the Vehicle Code.

## I. Standard of Review

" 'The propriety of jury instructions is a question of law that we review de novo. [Citation.]' (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82 [89 Cal.Rptr.3d 34].) If an instruction is found to be erroneous, reversal is required only when 'it appears probable that the improper instruction misled the jury and affected [its] verdict. [Citation.]' (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)" (*SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 863 [143 Cal.Rptr.3d 711].) In determining whether a jury was likely misled, the court must also evaluate " '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' ([*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548,] 580–581 [34 Cal.Rptr.2d 607, 882 P.2d 298].)" (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1757 [52 Cal.Rptr.2d 620].)

## II. Holland's Asserted Negligence Per Se

Spriesterbach contends that the trial court should have instructed the jury that it must find Holland negligent per se if it found she violated section 21804, which governs a driver's duty of care when turning from private property onto a public street. Further, he urges, the trial court's failure to give the requested negligence per se instruction prejudicially affected the verdict. For the following reasons, we do not agree.

### A. Negligence Per Se

■ Where a statute establishes a party's duty, " 'proof of the [party's] violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a justification or excuse for the statutory violation.' (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 547 [25 Cal.Rptr.2d 97, 863 P.2d 167].) This rule, generally known as the doctrine of negligence per se, means that where the court has adopted the conduct prescribed by statute as the standard of care for a reasonable person, a violation of the statute is presumed to be negligence. (*Casey v. Russell* (1982) 138 Cal.App.3d 379, 383 [188 Cal.Rptr. 18].)

■ "The negligence per se doctrine, as codified in Evidence Code section 669, creates a presumption of negligence if four elements are established: '(1) the [party opposing a finding of negligence per se] violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the

injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.' (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1420 [107 Cal.Rptr.2d 50].) The first two elements are questions of fact, while the latter two are questions of law. (*Ibid.*)" (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 218 [7 Cal.Rptr.3d 597].) If the party seeking to prove negligence per se establishes a presumption of negligence, the burden then shifts to the other party to rebut the presumption by proof that, among other things, "[t]he person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . ." (Evid. Code, § 669, subd. (b)(1).)

### B. *Section 21804*

Section 21804, on which Spriesterbach's proposed negligence per se instruction was based, provides as follows:

"(a) The driver of any vehicle about to enter or cross a highway from any public or private property, or from an alley, shall yield the right-of-way to all traffic, as defined in Section 620, approaching on the highway close enough to constitute an immediate hazard, and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety.

"(b) A driver having yielded as prescribed in subdivision (a) may proceed to enter or cross the highway, and the drivers of all other vehicles approaching on the highway shall yield the right-of-way to the vehicle entering or crossing the intersection."

The court considered the duty of care required by former section 553 (the predecessor to § 21804) in *Dickison v. La Thorpe* (1954) 124 Cal.App.2d 190 [268 P.2d 164] (*Dickison*). There, the defendant's vehicle hit the plaintiff's as the plaintiff turned left from a private roadway onto a public highway. The plaintiff had paused at the highway entrance and at the traffic island separating the northbound and southbound lanes, but had been unable to see the defendant because heavy fog limited her visibility. The defendant saw the plaintiff's car before he hit it but was unable to stop. (*Id.* at pp. 192–193.)

The drivers sued each other for negligence, and the jury returned a verdict against the plaintiff on her complaint and against the defendant on his cross-complaint. The court granted a new trial for the plaintiff. The defendant appealed, contending that a jury could not return a verdict for the plaintiff because she was negligent as a matter of law.

■ The Court of Appeal affirmed the grant of a new trial. (*Dickison, supra,* 124 Cal.App.2d at p. 192.) It explained that under former section 553,

a driver entering a highway from a private road or driveway had a duty to yield to approaching traffic "unless, as a reasonably prudent and cautious person he believes, and has the right to believe that he can pass in front of the other car in safety." (*Dickison*, at p. 194.) In the case before it, the plaintiff "stopped before entering the highway. When she reached the center island, she again stopped, lowered her right window and looked to the right before starting across the northbound traffic lanes. She saw no car approaching and proceeded across, looking to her right until approximately half way across the northbound traffic lane. . . . [¶] The evidence shows that plaintiff . . . was mistaken as to her ability to safely cross the highway. However, it was said in *Malinson* v. *Black* [(1948)] 83 Cal.App.2d 375, 378 [188 P.2d 788], that *every mistake of judgment is not negligence*, for mistakes are made even in the exercise of ordinary care, and whether such mistakes of judgment constitute negligence, is a question of fact." (*Ibid.*) Thus, the court said, it could not find that the plaintiff was negligent as a matter of law or that the evidence would not support a judgment in her favor. (*Ibid.*)

The court reached a similar result in *Wilkins* v. *Sawyer* (1965) 232 Cal.App.2d 458 [42 Cal.Rptr. 817] (*Wilkins*). There, a collision occurred between the plaintiff, who was driving on a public road, and the defendant, who entered that road from a private driveway. The drivers sued each other for negligence, and the jury returned a general verdict denying relief to both drivers. The plaintiff appealed, contending that the defendant was guilty as a matter of law of an unexcused violation of former section 21804, which then provided as follows: " 'The driver of a vehicle about to enter or cross a highway from any private property, or private road or driveway or from an alley not exceeding a width of 22 feet or from any alley as may be defined by local ordinance shall yield the right-of-way to all vehicles approaching on the highway.' " (232 Cal.App.2d at p. 462, fn. 1.)

The Court of Appeal affirmed, concluding that the defendant had not violated section 21804 as a matter of law. (*Wilkins, supra*, 232 Cal.App.2d at p. 462.) According to the court, although section 21804 required the defendant to yield the right of way, that requirement did not imply that an entrant from a private driveway onto a road was necessarily negligent if a collision occurred. It explained: " 'Literally, this section would require the prospective entrant from a private road to yield the right of way to all vehicles on the highway regardless of where they were. This would be an unreasonable interpretation. For that reason, the courts have interpreted the section to mean that a prospective entrant from a private road may lawfully enter a highway so long as there is no vehicle so near as to constitute an immediate hazard. [Citations.]' " (232 Cal.App.2d at pp. 462–463.)

The court continued: "Did Wilkins' vehicle constitute an immediate hazard? In one sense it certainly did because an accident took place. And in the

same sense it could be concluded that Sawyer disobeyed the Vehicle Code section, even though he stopped, looked, saw nothing (because nothing was visible) and the status of Wilkins' car as an 'immediate hazard' was only such because of Wilkins' misjudgment of a safe rate of speed under the combined circumstances—a curve in the road and the presence of the high foliage.

■ "But disobedience of the statute is only presumptively negligent. A jury can still find that the presumption has been overcome if the facts warrant a finding that disobedience of the statute was excused or justified. [Citation.]

"Here, therefore, we need not labor the nice question whether the test of 'immediacy of hazard' is, in every case, to be wholly objective, because the facts in this case, regardless of their sufficiency to show observance of the statute, *are* sufficient to justify the jury's conclusion that disobedience was excused.

"Sawyer had allowed all visible traffic to pass. When he entered the highway it was, so far as visibility from his point of observation was concerned, entirely clear—i.e., if the jury accepted his account of what happened. To have held him guilty of an unexcused violation of the section under the circumstances, the jury would have had to find that no one could possibly nonnegligently enter that road from that driveway at least without having first posted a lookout sufficiently far down the road to warn of the possibility of approaching eastbound traffic beyond any entrant's range of vision. The jury was not required to believe that these were the minimum requirements of a driver exercising ordinary care. *The test of the behavior of the 'reasonably prudent and cautious man' applies in determining whether a party has or has not acted in subservience to this section. (Dickison* v. *LaThorpe*[, *supra*,] 124 Cal.App.2d [at p.] 194 . . . .) This is one of those cases where the question is one of fact for the jury's determination." (*Wilkins, supra,* 232 Cal.App.2d at pp. 462–463, fn. omitted, italics added.)

■ *Dickison* and *Wilkins* are instructive here. Together, they stand for the proposition that a driver entering a public highway from private property who collides with a vehicle traveling on the public road is not necessarily liable for a violation of section 21804. Rather, the driver violates this section only if he or she fails to act as a " 'reasonably prudent and cautious [person].' " (*Wilkins, supra,* 232 Cal.App.2d at pp. 462–463.) Whether the driver failed to so act is a question of fact for the trier of fact to decide.

    C.   *The Trial Court Did Not Prejudicially Err in Refusing to Instruct the Jury That if Holland Violated Section 21804, She Was Negligent Per Se*

Spriesterbach contends that the trial court should have instructed the jury that if it found Holland violated section 21804, it must find she was

negligent. He urges that had the jury been so instructed, "it is reasonably probable that the jury would have answered 'yes' to the first question on the verdict form, 'Was Janice Holland negligent?'" It then would have been Holland's burden, Spriesterbach contends, to demonstrate that her negligence was excused.

We do not agree. Although the trial court declined to give a negligence per se instruction,[2] it did instruct the jury regarding section 21804 and a driver's duty of care as follows:

"Negligence is the failure to use reasonable care to prevent harm to oneself or to others. [¶] A person can be negligent by acting or failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. [¶] You must decide how a reasonably careful person would have acted in Janice Holland's situation.

"A person must use reasonable care in driving a vehicle. Drivers must keep a lookout for pedestrians, obstacles, and other vehicles. They must also control the speed and movement of their vehicles. The failure to use reasonable care in driving is negligence.

"When the law requires a driver to 'yield the right-of-way' to another driver or pedestrian, this means that the driver must let the other driver or pedestrian go first. [¶] Even if someone has the right-of-way, that person must use reasonable care to avoid an accident.

"The driver of any vehicle about to enter or cross a road from any public or private property, or from an alley, shall yield the right-of-way to all traffic, approaching on the road close enough to constitute an immediate hazard, and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety. [¶] The term 'traffic' includes pedestrians, ridden animals, vehicles, street cars, bicycles, and other conveyances, either singly or together, while using any highway for purposes of travel.

---

[2] While discussing the instruction outside the jury's presence, the court explained: "Negligence per se is when there's [no] question that you violated the statute. And here this has all sorts of stuff like who has the right-of-way and whether she needed to continue [to yield] the right-of-way. And, frankly, whether he had some responsibility to slow down when he got there. I'm not sure that she is similarly in a negligence per se statute [sic], because the word "immediate hazard" under 703 is if the approaching vehicle—and I'm going to put including a bicycle—is so near or approaching so fast that a reasonably careful person would realize there's a danger of collision or accident and . . . there's some question as to whether she could see him."

"The statute just read to you uses the words 'immediate hazard,' " and "[a]n immediate hazard exists if the approaching vehicle, including a bicycle, is so near or approaching so fast that a reasonably careful person would realize that there is a danger of collision."

Assuming without deciding that the trial court should have given a section 21804 negligence per se instruction, its refusal to do so was not prejudicial. As we have discussed, to find that Holland violated section 21804, the jury would have to have found not only that Spriesterbach posed an immediate hazard to which Holland failed to yield, but also that Holland failed to act as a " 'reasonably prudent and cautious [person].' " (*Wilkins, supra,* 232 Cal.App.2d at p. 463.) Spriesterbach posits that had the jury been properly instructed, it might have done so. But the trial court *did* instruct the jury that "[n]egligence is the failure to use reasonable care to prevent harm to oneself or to others" and "[a] person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation." Having been so instructed, the jury found that Holland was not negligent. In other words, the jury necessarily found that Holland did *not* fail to use reasonable care to prevent harm to herself or others, and she did *not* do something that a reasonably careful person would not do in the same situation or fail to do something that a reasonably careful person would do in the same situation.

In light of these findings, it is clear that even if the jury had been instructed as Spriesterbach argues it should have been, it necessarily would have found that Holland did not violate section 21804 because she did not fail to act as a reasonably cautious and prudent person. Accordingly, the jury's findings would not have given rise to a presumption of negligence and the burden never would have shifted to Holland to show that her statutory violation was excused.

III. *Spriesterbach's Asserted Negligence Per Se*

Spriesterbach contends the trial court erred by instructing the jury that riding a bicycle on the sidewalk in the opposite direction of the street traffic violated the Vehicle Code and, therefore, was negligent per se. For the following reasons, we conclude that the instruction was erroneous: the Vehicle Code did not require Spriesterbach to ride in the same direction as the vehicular traffic, and thus his failure to do so was not negligent per se. However, even though the instruction was erroneous, it was not prejudicial because the jury never reached the issue of Spriesterbach's negligence. Therefore, the error does not require reversal.

A.  *The Trial Court Erred by Instructing the Jury That Riding on the Sidewalk Against the Flow of Street Traffic in the City of Los Angeles Constituted Negligence Per Se*

   1.  *The Challenged Instruction Is Inconsistent with the Statutory Language*

Sections 21650 and 21650.1 govern the riding of bicycles on sidewalks in the absence of a local ordinance. It is undisputed that the City of Los Angeles, where the collision took place, neither prohibits bicycle riding on the sidewalk nor prescribes the direction of such bicycle travel.[3] Thus, we are concerned in this case only with state law.

Section 21650 provides that bicycles may be ridden on a sidewalk: It says that *vehicles* must be driven on the "right half of the roadway," but that *bicycles* may be operated "*on any sidewalk,* on any bicycle path within a highway, or along any crosswalk or bicycle path crossing, where the operation is not otherwise prohibited by this code or local ordinance." (Italics added.)

Section 21650.1 governs the direction of bicycle travel in the absence of a local ordinance. It provides that a bicycle operated "on a *roadway,* or the

---

[3] Los Angeles Municipal Code section 56.15, subdivision 1 provides: "No person shall ride, operate or use a bicycle, unicycle, skateboard, cart, wagon, wheelchair, rollerskates, or any other device moved exclusively by human power, on a sidewalk, bikeway or boardwalk in a willful or wanton disregard for the safety of persons or property."

We note that local regulations concerning bicycle riding on sidewalks vary tremendously by jurisdiction. According to the "L.A. County Sidewalk Riding Guide" maintained by the Los Angeles Department of Transportation (LADOT) Bike Blog, sidewalk riding is permitted in 12 cities in Los Angeles County and is prohibited in 32 cities and the county itself. In 25 cities, sidewalk riding is not permitted in "business districts;" in another 19 cities, there is no clear language in the municipal code concerning sidewalk bicycle riding. (<http://ladotbikeblog. wordpress.com/2010/09/22/la-county-sidewalk-riding-epilogue/> [as of Apr. 9, 2013].)

The LADOT Bike Blog observes as follows: "If you take a close look at the sidewalk riding map, you'll see quite a jumble of rules and regulations across LA County. Think about if that jumble were applied to another moving vehicle, like, say, a car. What would it be like were the 'right turn on red' law to be applied city by city instead of state by state? Endless accidents by drivers unsure of what to do next; lawsuits; deaths; lots and lots of tickets for moving violations; it would be total chaos. Traffic rules demand a certain amount of uniformity, which is why most guidelines governing how cars move through space are dictated at the state level. [¶] . . . [¶] If bicycles are supposed to be considered vehicles with responsibilities and rights equal to automobiles, like [California Vehicle Code section] 21200 states, then bicyclists deserve to have rules for their operation that are at least as uniform as the rules for operating an automobile." (<http://ladotbikeblog.wordpress.com/2010/09/22/la-county-sidewalk-riding-epilogue/> [as of Apr. 9, 2013].)

We echo the sentiments of the LADOT Bike Blog and urge the Legislature to adopt uniform legislation governing bicycle riding on sidewalks. In the absence of such uniform legislation, we fear that collisions like the one here will continue to occur.

*shoulder of a highway*, shall be operated in the same direction as vehicles are required to be driven upon the roadway." (Italics added.)

Section 21650.1 does not define "roadway" or "highway." Those terms are defined elsewhere in the Vehicle Code, however. Specifically:

A *"highway"* is "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (§§ 360, 590.)

A *"roadway"* is "that portion of a highway improved, designed, or ordinarily used for vehicular travel." (§ 530.)

A *"sidewalk"* is "that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel." (§ 555.)

■ A "highway" thus has two distinct parts: a *"roadway,"* intended for vehicular travel, and a *"sidewalk,"* intended for pedestrian travel. While a "highway" includes a "roadway," the two terms are not synonymous. Instead, a "highway" is composed of both a "roadway" and a "sidewalk."

■ Accordingly, because section 21650.1 requires bicycles to travel in the same direction as vehicular traffic only when ridden on "a roadway" or the "shoulder of a highway," it does not by its plain language require bicycles to travel with the flow of traffic when ridden on a "sidewalk." The court erred by instructing the jury otherwise.

Holland argued in the trial court, and contends on appeal, that section 21650.1 should be interpreted to require bicycles to travel in the same direction as vehicular traffic even when ridden on the sidewalk because, pursuant to section 21200, "[a] person riding a bicycle . . . upon a highway has all the rights and is subject to all the provisions applicable to the driver of a vehicle by this division . . . except those provisions which by their very nature can have no application." (§ 21200, subd. (a).) Thus, Holland says, because a *motorist* is not permitted to ride against the flow of vehicular traffic, a *bicyclist* should not be permitted to do so either.

■ We do not agree. It is a well-settled principle of statutory interpretation that when harmonizing two statutes relating to the same subject, a " 'particular or specific statute will take precedence over a conflicting general statute.' [Citation.]" (*Thorpe v. Reed* (2012) 211 Cal.App.4th 1381, 1393 [150 Cal.Rptr.3d 454].) Section 21200, which sets out general principles governing

bicyclists generally, is far more general than section 21650.1, which governs the direction of bicycle travel. Accordingly, section 21650.1 governs.

■■ Holland alternatively contends that bicyclists must ride with the flow of traffic on a sidewalk because a sidewalk is a "shoulder of a highway" within the meaning of section 21650.1. We do not agree. As we have said, the Vehicle Code defines "sidewalk" as the portion of the highway set apart by curbs or barriers, and intended for pedestrian travel. (§ 555.) The highway *shoulder* (which the Veh. Code does not define) is, as commonly understood, neither set apart by curbs nor intended for pedestrian travel.[4] Further, section 21650, subdivision (g) distinguishes between the "shoulder of a highway" and a "sidewalk"—a distinction that would not make sense if a highway shoulder and sidewalk were synonymous.[5]

For all of these reasons, thus, the section 21650.1 instruction was inconsistent with the statutory language.

### 2. *The Challenged Instruction Is Inconsistent with Case Law*

Holland concedes that no California case has decided the issue before us, but urges that the trial court's interpretation of section 21650.1 is consistent with the court's analysis in *In re Devon C.* (2000) 79 Cal.App.4th 929 [94 Cal.Rptr.2d 513] (*Devon C.*). We are not persuaded. In *Devon C.*, the police stopped Devon, a minor, for riding a bicycle on a sidewalk without a helmet. Devon told police he had a gun and, as a consequence, he was made a ward of the court. On appeal, he contended that evidence of his firearm possession should have been suppressed because he was stopped illegally. Specifically, he claimed that riding his bicycle on a sidewalk without a helmet was not unlawful and, therefore, could not form the basis for a lawful stop by the police. (*Id.* at pp. 931–932.)

The court disagreed. It explained that section 21212, subdivision (a) provides that a person under 18 years of age "shall not operate a bicycle . . . *upon a street*, bikeway, as defined in . . . the Streets and Highways Code, or any other public bicycle path or trail unless that person is wearing a properly fitted and fastened bicycle helmet . . . ." (Italics added.) It noted that under the Vehicle Code, "street" and "highway" are synonymous, and a "sidewalk"

---

[4] Merriam-Webster's Collegiate Dictionary (10th ed. 1995) at page 1085 defines "shoulder" as "either edge of a roadway; *specif[ically]:* the part of a roadway outside of the traveled way."

[5] Section 21650, subdivision (g) provides: "This section does not prohibit the operation of bicycles *on any shoulder of a highway, on any sidewalk,* on any bicycle path within a highway, or along any crosswalk or bicycle path crossing, where the operation is not otherwise prohibited by this code or local ordinance." (Italics added.)

is a "portion of the highway." (*Devon C., supra*, 79 Cal.App.4th at p. 932, citing §§ 590, 360, 555.) Thus, the court said: "[W]hen Devon was riding his bicycle on a sidewalk, he was riding on a 'portion of a highway.' Since the terms 'street' and 'highway' are synonymous, it follows Devon was also riding his bicycle on a 'street.' The fact that he did so while not wearing a helmet constituted a violation of law, justifying his detention by the police officer." (79 Cal.App.4th at p. 933.)

Holland contends the present case is analogous to *Devon C.* She urges: "[S]ince Spriesterbach was riding his bicycle on a 'sidewalk,' he was riding on the 'highway.' 'A bicycle operated on . . . "highway" shall be operated in the same direction as vehicles are required to be driven upon the roadway.' (Veh. Code § 21650.1.) This is essentially the instruction that was given to the jury, which is an accurate statement of law."

Not so. While Holland is correct that a "sidewalk" is part of the "highway," section 21650.1 does not require bicycles to be operated in the same direction as vehicles are required to be driven "on a highway." Instead, it requires bicycles to be operated in that direction on *"the shoulder of a highway,"* which, as we have already explained, does not include the sidewalk.

Holland also contends the present case is analogous to *People v. McKay* (2002) 27 Cal.4th 601 [117 Cal.Rptr.2d 236, 41 P.3d 59] (*McKay*). There, the defendant was stopped while riding the wrong direction "on a residential street." (*Id.* at p. 606.) During a search incident to the defendant's arrest, an officer found methamphetamine in the defendant's sock. The defendant moved to suppress the evidence, contending the arrest was invalid because he had not violated the law. The Supreme Court disagreed, noting there was "no dispute" that the arresting officer was justified in stopping the defendant based on a violation of section 21650.1. (27 Cal.4th at p. 606.)

We do not agree with Holland that *McKay* is relevant to the present case. In *McKay*, the defendant was riding his bicycle in the wrong direction on a *roadway*, in clear violation of section 21650.1.[6] The defendant was not, as was Spriesterbach here, riding on a *sidewalk. McKay*, therefore, is irrelevant to our analysis.

■ For all of these reasons, section 21650.1 does not require bicyclists riding on a sidewalk to travel in the same direction as vehicular street traffic.

---

[6] In its statement of facts, the court stated that defendant was riding "on a residential street." (*People v. McKay, supra*, 27 Cal.4th at p. 606.) We believe it is clear from the court's discussion that defendant was riding on what the Vehicle Code refers to as a "roadway"—i.e., "that portion of a highway improved, designed, or ordinarily used for vehicular travel." (§ 530.)

As a result, Spriesterbach did not violate section 21650.1, and the trial court erred in so instructing the jury.

### B. *It Is Not Probable That the Improper Instruction Misled the Jury and Affected Its Verdict*

As noted above, if an instruction is found to be erroneous, reversal is required only if it appears probable that the improper instruction misled the jury and affected its verdict. (*SCC Acquisitions, Inc. v. Central Pacific Bank, supra*, 207 Cal.App.4th at p. 863.) For the reasons that follow, it is not probable that the jury was misled by the erroneous section 21650.1 instruction and, therefore, the erroneous instruction does not require reversal.

The jury was asked to return a special verdict. The special verdict form asked the jury six questions, as follows:

"1. Was Janice Holland negligent?

"2. Was Janice Holland's negligence a substantial factor in causing harm to Micheal Spriesterbach?

"3. What are Micheal Spriesterbach's total damages?

"4. Was Micheal Spriesterbach negligent?

"5. Was Micheal Spriesterbach's negligence a substantial factor in causing him harm?

"6. What percentage of responsibility for Micheal Spriesterbach's harm do you assign to: Defendant Janice Holland? Plaintiff Micheal Spriesterbach?"

For questions 1 through 5, the jury was instructed to continue to the next question only if it answered "yes"; if it answered "no," it was directed to "stop here, answer no further questions, and have the presiding juror sign and date this form."

The jury answered "no" to question 1: "Was Janice Holland negligent?" It therefore never considered Spriesterbach's *own* negligence—the only issue to which the section 21650.1 instruction was relevant. The instruction, though erroneous, was not reasonably likely to have affected the jury's verdict.

Spriesterbach urges that the jury may have concluded that Holland was not negligent because she had no reason to expect someone "to approach from

her right on the sidewalk." We do not agree. *Nothing* in the court's instructions suggested that Holland was not required to watch for, or yield to, persons or vehicles approaching from the right. To the contrary, the only reasonable inference to be drawn from the court's instructions (discussed above) was that Holland had a duty to be aware of, and yield to, traffic approaching from *any* direction.

Taken together, these instructions clearly told that jury that Holland was required to (1) use reasonable care in driving her car, (2) be aware of approaching hazards, (3) control her car's speed and movement, and (4) yield the right-of-way to Spriesterbach. In view of these instructions, the jury could not reasonably have inferred that Holland had a different duty of care with regard to vehicles or pedestrians approaching from her right than she did with regard to vehicles or pedestrians approaching from her left.

Spriesterbach suggests that the jury likely was misled regarding the parties' relative duties of care because Holland's attorney suggested in closing argument that Spriesterbach, not Holland, was responsible for the collision, emphasizing Spriesterbach's violation of section 21650.1 ("[T]he law . . . just cited to you by the judge and that I mentioned as well, reflects what we all know, that when you exit a private driveway or, in this case, a shopping center exit, you anticipate pedestrians coming from your right. But you don't anticipate faster moving traffic such as bicyclists coming from your right."). While it is true that Holland's attorney suggested that the collision was Spriesterbach's fault, we presume the jury followed the court's instructions, not the argument of counsel. (*People v. Valdez* (2004) 32 Cal.4th 73, 114, fn. 14 [8 Cal.Rptr.3d 271, 82 P.3d 296].) As we have discussed, the court correctly instructed the jury concerning Holland's duty of care, and its instructions, not counsel's argument, are determinative, "for '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the [attorney's] comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Mayfield* (1993) 5 Cal.4th 142, 179 [19 Cal.Rptr.2d 836, 852 P.2d 331].)[7]

Spriesterbach also suggests that the court's erroneous section 21650.1 instruction prevented his counsel from arguing "that Holland failed to act reasonably, even under the general negligence standard, when she failed to expect lawful bicycle traffic coming from both directions." In fact,

---

[7] Indeed, the court specifically instructed the jury that it must accept the law as stated by the court, and "[i]f the attorneys in their closing argument say anything different about what the law means, you must follow these instructions."

Spriesterbach's counsel *did* argue that Holland should have seen Spriesterbach coming from her right, telling the jury as follows: "It's the most fundamental of duties that we have as drivers of automobiles, to look where you are going. And you know why it's so important? Because it's not about just the sidewalk. It not just about right here. It's about when you don't look, that's what causes car crashes. That's what injures people. That's what kills people . . . . [¶] . . . Mrs. Holland never looked forward. We heard no testimony that she actually looked forward . . . . We know that she didn't pay attention because she was looking to her left and then simultaneously going forward. We know that there was a stop sign. Remember this? We saw this photo, didn't we? Right? There's a stop sign right there. There's a stop sign there for a reason. Let me show you another photo. See that stop sign? We all know what they are there for. There's no stop sign on this side. There's no stop sign on that side. There's no stop sign telling pedestrians 'Hey, wait' or bicyclists 'Hey, wait' or people on a motorized vehicle 'Hey, wait.' There's nothing like that. There's just one stop sign for people exiting that Ralphs parking lot. And we know why it's there. Because you stop. You yield. You make sure there are no hazards coming *from one direction or another. You can't just look left. You can't just look right. You have to look in front of you before you go forward.* Now, we also know that she failed to yield while exiting a private driveway. You are going to hear a law straight from the Vehicle Code. See that right there, special instruction no. 2? . . . This instruction specifically says that 'A driver of any vehicle about to enter or cross a roadway from a public or private property'—the Ralphs parking lot being private property—'or from an alley shall yield the right-of-way to all traffic approaching on the road close enough to constitute an immediate hazard and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety.' Just because you stop once doesn't mean that's sufficient. You have to look. You have to make sure no one is coming. What else do we have here? Failed to look before crossing over a sidewalk. It's important if there's a sidewalk there. It's not just a driveway that's going into the street. It's a driveway that requires you to drive over the sidewalk. We also have failed to look forward and to the right when making a right-hand turn. Failed to yield to a bicyclist directly in front of her. We all heard testimony that Mr. Spriesterbach was there to be seen. He was right in front of her." (Italics added.)

For all of these reasons, we conclude that it is not probable that the trial court's erroneous section 21650.1 instruction prejudicially affected the verdict.

## DISPOSITION

The judgment is affirmed. Each party shall bear its own costs on appeal.

Epstein, P. J., and Manella, J., concurred.