Filed 6/20/14  Magana v. Adame CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CATALINA MAGANA, | D063929 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00078825-CU-PO-SC) |
| AMELIA ADAME, AS TRUSTEE, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Swingley & Associates and James E. Swingley for Plaintiff and Appellant.

Shoecraft Burton and Robert D. Shoecraft, Devin T. Shoecraft for Defendant and Respondent.

Appellant Catalina Magana (Magana) appeals a judgment in favor of Amelia Adame, as trustee of the Amelia Adame Intervivos Trust (Adame), after the court sustained without leave to amend a demurrer to Magana's complaint for damages.

Magana contends she stated valid causes of action under Health and Safety Code[1] sections 13007 and 13008, and the court erroneously failed to grant her leave to amend her complaint. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In setting out the background facts, we accept as true the properly pleaded and material allegations of Magana's complaint. We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed.[2] (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

Magana sued Adame, alleging three causes of action: (1) negligently starting or permitting a fire to occur on her property (§ 13007); (2) negligently allowing the fire to spread to the property of another (§ 13008); and (3) negligence per se. The complaint alleged that on October 6, 2010, Magana lived on Montgomery Street, Chula Vista, California, and Adame owned an adjacent property on Montgomery Street. At approximately 3:23 a.m. on that day, a fire started on Adame's property and spread to Magana's property, destroying "a studio, a motor home, patio furniture, a work shed, tools inside the work shed, camping gear, a pop up tent, Christmas, and Halloween

---

[1]    All statutory references are to the Health and Safety Code unless otherwise stated.

[2]    Magana's counsel stated at the hearing on the demurrer that he had attached a copy of the police fire report "both to our complaint and both to this court, in the hearing of this matter." In its ruling on the demurrer, the court granted a motion to take judicial notice without specifying whether it was of the fire report or the complaint—for which judicial notice also was sought—or both documents. Magana does not challenge the court's ruling regarding judicial notice.

2

decorations, a fishing boat with trailer, a wooden fence, show car paint, damage to a car, all of which damages exceed $100,000. Additionally, [Magana] who was at the time a disabled person, suffering from a collapsed lung among other ailments, suffered personal injuries to her lungs which required subsequent medical care and forced her to move out of her residence for a period of time due to the residual smoke, ash and other post-fire air contamination."

Magana alleged that while the cause of the fire was undetermined, a trained police dog had discovered five separate places on Adame's property where ignitable liquids had been placed. Police stated in their report that the fire originated from Adame's storage area, which contained a "water heater, several propane tanks and cylinders containing unknown gas that failed during the fire and contributed to the intensity and heat generated. There were also several lockers and cabinets containing aerosols and paint products scattered throughout the debris field. Tool chests and bicycle parts made up the rest of the debris field."

Magana alleged: "A further search of [Adame's] property found ammunition for guns that went off during the fire and a propane heater which had been started so that occupants of [Adame's property] could keep warm at night." Magana further alleged Adame's property had been occupied by squatters: "[Magana] is informed and believes that various individuals lived at [Adame's property] including but not limited to John Meklos and Kenneth Vitel, who may or may not have had responsibility for igniting or spreading the fire to [Magana's property]. However, [Magana] . . . had personally complained many times to the adult daughters of [Adame], an elderly woman, regarding

3

the conditions on the property located at [Adame's property], namely that there were transient type people living there, who were living or squatting on the property and the owners of [Adame's property] refused to take responsibility for cleaning out or clearing out dangerous and flammable items on the premises which posed an unreasonable threat to [Magana's] safety and was the legal cause for [Magana's] damages."

Adame demurred to the complaint on grounds Magana had failed to allege facts sufficient to state causes of action. Specifically, she argued Magana had not alleged that Adame caused the fire or allowed it to spread, and there were no allegations supporting imposing liability on Adame for the acts or omissions of squatters who had occupied Adame's property. Adame summarized: "[Magana's] theory of liability against Adame is that [sections 13007 and 13008] impose strict liability on a property owner for *any* fire that *originates* from that person's property (even where, as here, a plaintiff is able to specifically identify a third party who is alleged to have actually caused the fire). [Magana's] reading is contrary to the plain language of these statutes and the interpreting decisional law." Regarding the negligence per se cause of action, Adame argued, "Read as a whole, [Magana's] complaint does not allege any *facts* which, if presumed true, would establish Adame violated a 'statute which was enacted to protect a class of persons of which [Magana] is a member against the type of harm which [Magana] suffered as a result of the violation of the statute.' "

Magana opposed the motion, arguing that Adame "allowed several 'squatters', for lack of a better term, to reside in the back part of the property, on a revolving basis—that is, as some of the 'squatters' would move on, others would replace them. [Magana] has

4

learned that two individuals whose names are known, John Meklos and Kenneth Vitel, resided on the property at the time of the incident."  Magana argued that under section 13007, Adame acted "*negligently* by allowing these squatters to reside on [Adame's property], *along with the un-permitted water heater, several propane tanks and cylinders* and even a propane heater, [and] should be responsible when a fire starts that spreads to an adjoining private property."  Magana also argued that under section 13008, [Adame] did not exercise due diligence:  "First, by not controlling the population of squatters on the property, [Adame] made the risk of fire greater than if only people resided in the residence at the front part of the property.  Second, by not riding [*sic*] the property of unsafe fire hazards—several propane tanks with unknown gases located about the back portion of the property where the fire both started and from which it spread, [Adame] increased the likelihood that if a fire did start, it would ignite other flammables by the presence of the exploding tanks."

At the hearing on the motion, Magana's counsel conceded he had not properly pleaded the negligence cause of action:  "I will admit I did not provide the last two elements the Evidence Code [section] 669[3] requires to maintain a negligence per se cause

---

3    Evidence Code section 669 states in part:  "(a) The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.  [¶] (b) This presumption may be rebutted by proof that:  [¶] (1) The person violating the statute, ordinance, or

5

of action.  We believe that we can.  I failed to do it.  It was poor drafting on my part, and I apologize to the court.  But I submit that I can legitimately plead that in this case."

The court asked Magana's counsel what specific facts he could allege to amend the complaint.  Counsel replied, "First of all, these people were not leaseholders.  They were basically squatters.  They were people that got out of prison shortly before they came up to using [Adame's property] as a halfway house.  [¶]  . . . [¶]  Secondly, we submit that [Adame] was negligent in allowing the number of items, some of which were violation of law [*sic*] to exist on this property which could, and, in fact, did ignite a fire and spread the fire to [Magana's] property.  [¶]  We think in good conscience, your honor, we are at least entitled to one more stab at amending this complaint so that we can satisfy the court that we've done our due diligence on this case."  Magana's counsel further argued, "We submit that with some discovery, we can find out more facts as to the involvement of the illegal water heater, or perhaps other items that aren't even named in the [police] report to be a source of this fire in the spreading."

The court sustained the demurrer without leave to amend, explaining,  "If that were the standard, then we'd never have any demurrers.  People would always have an opportunity to go out and go on a fishing expedition.  [¶]  The court's tentative is confirmed as the order of the court. . . .  You haven't presented the court with any information [about] how the complaint could be amended to state a valid cause of action against this defendant."

---

regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law[.]"

DISCUSSION

I. *Standard of Review*

On review of an order sustaining a demurrer, we independently review the trial court's ruling and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Caifornia, Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We take as true the complaint's properly pleaded and implied factual allegations, but not mere contentions or assertions contradicted by judicially noticeable facts. (*Evans v. City of Berkeley*, *supra*, 38 Cal.4th at p. 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

" '[T]he issue of leave to amend is always open on appeal, even if not raised by the plaintiff. [Citation.]' [Citation.] '[L]eave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations.' [Citation.] 'The plaintiff has the burden of proving that an amendment would cure the defect.' " (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 792, quoting *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 & *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.)

When a ruling on a demurrer is based on an interpretation of statutory provisions, we likewise review those issues de novo. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1336.) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent

so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107; see also *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047; *County of San Diego v. Alcoholic Beverage Control Appeals Bd.* (2010) 184 Cal.App.4th 396, 401.)

## II. *Applicable Law*

Section 13007 states: "Any person who personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire." Section 13008 states: "Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly

8

owned, without exercising due diligence to control such fire, is liable to the owner of such property for the damages to the property caused by the fire."

One of the few cases interpreting sections 13007 and 13008 states: "The only persons made liable under sections 13007-13008 are those who cause fires which escape to property belonging to others." (*People v. Williams* (1963) 222 Cal.App.2d 152, 155.) In *Williams*, a saw mill operator accumulated flammable waste materials from a mill's operation in a pile rather than burning it concurrently with the milling. He failed, however, to properly clear grass, slash, snags and other flammable cover around the pile as required by statute. Another employee subsequently set fire to the waste pile. While this waste pile was burning, it was not continuously attended by any able-bodied adult, and its size was not regulated to prevent the fire escaping to the uncleared ground litter and growth around it. (*Id.* at p. 153.) The *Williams* court sustained a demurrer to the plaintiff's complaint. (*Id.* at pp. 152, 156.)

### III. *Cause of Action for Violation of Section 13007*

Here, the gravamen of Magana's claim under section 13007 is that Adame allowed transients to live on her property and they negligently started a fire. Magana had complained to Adame's adult daughters about the transients' presence there numerous times over the years; therefore, Adame was aware, or should have been aware, that a fire might start and spread, causing harm to Magana's property. Magana adds that "there was an illegal water heater, an illegal structure, several propane tanks and cylinders and exploded ammunition . . . found on the property . . . following the fire, according to the [fire report]."

9

But even liberally construed, those allegations do not suffice to state causes of action for liability because Magana has not satisfied the requirements of section 13007 of showing how Adame, by her daughters' having notice of the transients who stayed on her property, "allow[ed] fire to be set to, or allow[ed] a fire kindled or attended by [her] to escape to, the property of another . . . ."

Further, Magana has not identified under what laws the water heater and structure were illegal, or how the fact that Adame had propane tanks, cylinders and ammunition on her property violated a specific standard of care by which Adame was required to abide. Magana has provided no evidence that Adame was even aware of the actions of those who caused the fire; therefore, there is no basis for concluding that under section 13007, Adame should be held liable for damages.

IV. *Cause of Action for Violation of Section 13008*

Magana alleges that Adame was liable for damages under section 13008 because Adame "refused to take responsibility for cleaning out or clearing out dangerous and flammable items on the premises which posed an unreasonable threat to [Magana's] safety and was the legal cause for [Magana's] damages." Magana has not pleaded facts supporting a cause of action under that statute because she alleges no facts from which we may infer that Adame "allow[ed] any fire burning upon [her] property to escape to the property of another . . . without exercising due diligence to control such fire." Magana does not allege facts showing that Adame knew the fire had burned on her property, or what due diligence she was required, but failed, to take to stop its spread. Moreover, the complaint specifically names Meklos and Vitel as occupants of Adame's property at the

10

time of the fire, and Magana avers those individuals might have been responsible for igniting and spreading the fire. Magana has not pleaded facts showing why Adame—rather than, those individuals—was liable for the fire escaping to Magana's property. Accordingly, the court did not err in sustaining the demurrer.

Our conclusions regarding the two statutory claims are supported by different cases applying earlier versions of sections 13007 and 13008. In each case, the circumstances within the control of the defendant were such as to make it foreseeable a fire would start or spread. In one case, the trial court found that a power transmission line carrying 66,000-volt current came into contact with a telephone line and telephone pole, thereby causing a fire in the grass beneath the lines which spread into and burned over a large area of adjoining ranchland before being brought under control. The Southern California Edison Company owned and operated both the power and telephone lines, the latter running along parallel to and directly beneath the power line. The trial court found the cause of the fire to be the negligent construction and maintenance of the transmission and telephone lines by the defendant. (*Ventura County v. Southern Cal. Edison Co.* (1948) 85 Cal.App.2d 529, 531.) The appellate court affirmed the judgment, ruling that the defendant "must be charged with knowledge of the condition of its equipment [because] it took no steps to prevent the occurrence of fire, which was the reasonably foreseeable consequence of that condition. [Southern California Edison Company] thus may fairly be said to have negligently allowed the fire to be set in the adjoining ranchlands." (*Id.* at p. 533.)

11

In *Osborne v. Winter* (1933) 133 Cal.App.664, the appellate court affirmed a finding the appellant was liable under a predecessor statute to section 13007, noting "[I]t was plainly shown by other evidence that the fire had started 'right where [appellant] was raking', and that there was 'plenty of wind'. A degree of care corresponding to the danger both as to time and place of starting a fire without compliance with the law, is required in such a case, and due care requires circumspection." (*Osborne*, at p. 668.)

In *Richter v. Larabee* (1933) 136 Cal.App.16, the underlying facts were that after the fire department and the fire warden had put out a fire and gone away, the defendant had left the burned premises, gone away to his dinner at a point a quarter of a mile distant, and had taken no actions toward seeing that the premises were watched or precautions to prevent the fire from becoming active again. (*Id.* at p. 20.) Accordingly, the court of appeal affirmed the trial court's finding under a predecessor statute to section 13008: "While it may not be said that the defendant was negligent in any of the preparations made by him to control the fire, there is plenty of evidence in the record to justify the trial court in coming to the conclusion that the defendant was guilty of negligence in going off and leaving the same unguarded." (*Id.* at p. 22.)

Here, the complaint alleges Adame is elderly. But there is no allegation she actually resides on her property. There is also no allegation she knew of the risk of fires posed by the transients. The complaint merely states that Magana had informed Adame's adult daughters many times about the presence of the transients on Adame's property. Even construing the complaint in the light most favorable to Magana, we cannot infer that Adame's daughters informed Adame regarding Magana's complaints about the

12

transients.  Beyond that, it is too attenuated to conclude that the mere presence of the transients on Adame's property made it foreseeable that they would cause a fire there that would spread to Magana's property, and that Adame failed to exercise due diligence to prevent the fire's spread.  In light of the cases interpreting sections 13007 and 13008, Magana has not alleged sufficient facts to support a conclusion Adame was liable for violating those statutes.

With respect to appellant's contention she should have been granted leave to amend her complaint, we note an appellant has the burden of showing "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  "[H]owever, leave to amend should *not* be granted where . . . amendment would be futile."  (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685.)

The trial court gave Magana an opportunity to explain how the defects in her complaint could be cured, but she failed to do so.  Nonetheless, Magana asserts "[i]t was an abuse of discretion by the trial court to not allow [her] *at least one* opportunity to amend her complaint so that she could state a viable cause of action in proper form against [Adame.]"  Appellant is mistaken that everyone always has two bites at the apple.  Rather, they have an opportunity to demonstrate how they can amend the complaint to cure its defects.  The court gave appellant the opportunity and she failed.

13

## V.  *Cause of Action for Negligence*

Magana's counsel conceded at the hearing on the demurrer that he did not properly plead a cause of action for negligence.  We turn to the issue of whether Magana has made a showing she can amend her complaint to state a cause of action for negligence.

"Where a statute establishes a party's duty, ' "proof of the [party's] violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a justification or excuse for the statutory violation." ' [Citation.]  This rule, generally known as the doctrine of negligence per se, means that where the court has adopted the conduct prescribed by statute as the standard of care for a reasonable person, a violation of the statute is presumed to be negligence.  [Citation.]  [¶] 'The negligence per se doctrine, as codified in Evidence Code section 669, creates a presumption of negligence if four elements are established:  "(1) the [party opposing a finding of negligence per se] violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." [Citation.]  The first two elements are questions of fact, while the latter two are questions of law.  [Citation.]' [Citation.]  If the [party seeking to prove negligence per se] establishes a presumption of negligence, the burden then shifts to the [other party] to rebut the presumption by proof that, among other things, '[t]he person violating the statute, ordinance, or regulation did what might reasonably be

14

expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.' (Evid. Code, § 669, subd. (b)(1).)" (*Spriesterbach v. Holland* (2013) 215 Cal.App. 4th 255, 263-264.)

In her appellate brief, Magana fails to allege any other violation of law by Adame. Rather, in requesting an additional opportunity for leave to amend her complaint, she cites to a case that states, "It has long been established that in ruling on a demurrer, the trial court is obligated to look past the form of a pleading to its substance. Erroneous or confusing labels attached by the inept pleader are to be ignored if the complaint pleads facts which would entitle the plaintiff to relief." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.) But Magana's failure is not one of form. It is substantive. In her appellate brief and at oral argument, Magana fails to show how the complaint could be amended. She does not identify any other law Adame purportedly violated, leaving us incapable of ascertaining the standard of care required for Adame to comply with that law or, therefore, whether Magana can plead sufficient facts to show Adame violated some other law. Accordingly, we also deny leave to amend the complaint as to the negligence cause of action.

DISPOSITION

The judgment is affirmed.  Amelia Adame, as trustee of the Amelia Adame Intervivos Trust, is awarded costs on appeal.

O'ROURKE, J.

WE CONCUR:

McINTYRE, Acting P. J.

AARON, J.

16